Shannon NICHOLS, Lee C. Nichols,
Brooke A. Nichols and Brittney M. Nichols,
Plaintiffs-Appellants,

Peggy A. LAUTENSCHLAGER,
Wisconsin Laborers' Health Fund
and University of Wisconsin Hospital
and Clinics Authority,
Plaintiffs,

v.

PROGRESSIVE NORTHERN INSURANCE COMPANY,
Beth C. Carr and Michael J. Schumate,
Defendants,

Edward NIESEN, Julie A. Niesen, and Berry
and Roxbury Mutual Insurance Company,
Defendants-Respondents-Petitioners.

Supreme Court

*No. 2006AP364. Oral argument November 28, 2007.
—Decided March 25, 2008.*

2008 WI 20

(Also reported in 746 N.W.2d 220.)

17

For the defendants-respondents-petitioners there were briefs by *Arnold P. Anderson* and *Mohr & Anderson, LLC,* Madison, and *Rick J. Mundt* and *Winner, Wixson & Pernitz,* Madison, and oral argument by *Arnold P. Anderson.*

For the plaintiffs-appellants there was a brief by *Jason J. Knutson* and *Axley Brynelson, LLP,* Madison, and oral argument by *Jason J. Knutson.*

An amicus curiae brief was filed by *William C. Gleisner, III* and *Law Offices of William C. Gleisner,* Milwaukee; *Linda V. Meagher* and *Habush Habush & Rottier, S.C.,* Waukesha; and *Lora A. Kaelber* and *End, Hierseman & Crane, LLC,* Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. N. PATRICK CROOKS, J. This is a review of an unpublished decision of the court of appeals,[1] affirming in part, reversing in part, and remanding with directions, an order of the Circuit Court for Columbia County, Judge Richard L. Rehm.

¶ 2. Petitioners, Edward and Julie Niesen (the Niesens) and their homeowner's insurance carrier, Berry and Roxbury Mutual Insurance Company (BR-MIC), seek review of that unpublished decision of the court of appeals. The court of appeals allowed the claim of Shannon, Lee, Brooke, and Brittney Nichols (the Nichols) to proceed against the Niesens for common-law negligence. The Nichols claimed that the Niesens

---

[1] *Nichols v. Progressive N. Ins. Co.,* No. 2006AP364, unpublished slip op. (Wis. Ct. App. Jan. 25, 2007).

21

were social hosts, who did not provide any alcoholic beverages to underage guests, but allegedly were aware that minors were on their property consuming alcoholic beverages. After leaving the Niesens' premises, one of these guests allegedly caused injuries while driving intoxicated. The circuit court had granted the Niesens' and BRMIC's motion to dismiss the Nichols' complaint, after concluding that the complaint failed to state a claim in common-law negligence. The primary issue upon review is whether a claim for common-law negligence should be permitted against social hosts under these circumstances.

¶ 3. We reverse the decision of the court of appeals. Doing so, we hold that, based on public policy grounds, a claim for common-law negligence cannot be maintained against social hosts, such as the Niesens, who allegedly were aware that minors on their property were consuming alcohol, but who did not provide the alcohol, when an underage guest later allegedly caused an alcohol-related car accident. To hold otherwise would be a significant extension of common-law liability. If that is to occur, in this instance, it should be done by the legislature, not by this court.

I

¶ 4. On June 5, 2004, the Nichols were in a motor vehicle on County Trunk Highway J in Columbia County, Wisconsin, when that vehicle was struck by another motor vehicle, driven by Beth Carr (Carr), which had crossed the highway's center line. The Nichols alleged that the accident was caused by Carr's "failure to properly manage and control the vehicle she was operating, due in part to the voluntary ingestion by her of intoxicating beverages." As a result of the accident, Shannon Nichols "suffered very severe personal inju-

ries," and Brittney, Brooke, and Lee Nichols "suffered injuries requiring medical care and treatment."

¶ 5. On the night of June 4, 2004, and into the early morning of June 5, 2004, the Nichols alleged that "a large gathering of underage high school students" congregated and consumed alcohol at the premises controlled by the Niesens.[2] The Nichols further alleged that the Niesens "knowingly permitted and failed to take action to prevent the illegal consumption of alcoholic beverages by underage persons, including . . . Carr on premises under their control contrary to Section 125.07(1)(a)3." On information and belief, the Nichols alleged that "the Niesens were aware that the minors on their property were consuming alcohol." The Nichols did not allege that the Niesens knew, in advance, that the students would be consuming alcohol. The Nichols contended that the Niesens "had a duty to supervise and monitor the activities on their property" and that they were negligent because they failed to do so.

¶ 6. The Nichols contended that the consumption of alcohol by Carr was a substantial factor in causing the accident. Defendant Michael Shumate (Shumate),[3] "or one or more adult residents of his household[,]" not the Niesens, was alleged to have provided the alcohol that was consumed by Carr on the Niesens' property. There was no allegation that Shumate was at the Niesens' property.

---

[2] The premises actually were owned by SweetWater Farms, Inc., but the Niesens were alleged to have controlled the premises "for their own benefit or for the benefit of said corporation."

[3] The Nichols' Second Amended Complaint spells the name "Shumate," but the Niesens' brief spells the name "Schumate." We will utilize the spelling in the Nichols' complaint.

23

¶ 7. The Nichols filed suit against Carr and her automobile insurance company, Progressive Northern Insurance Company (Progressive). The Nichols also filed a complaint against the Niesens and their homeowner's insurance company, BRMIC. Progressive settled for its policy limits with the Nichols, and was excused from further defense of Carr in this lawsuit. The Niesens then moved to dismiss the Nichols' complaint for failure to state a claim. The circuit court dismissed the Nichols' complaint, because it agreed with the Niesens that the Nichols' reliance on Wis. Stat. §§ 125.07(1)(a)3 and 125.035 (2003–04)[4] was misplaced, and also because it agreed with the Niesens that the Nichols had not stated a claim in common-law negligence. The Nichols did not allege a violation of § 125.035 in any of the three versions of their complaint, so there was no need for the circuit court to address that statute. The court of appeals affirmed the circuit court's holding that none of those statutes could provide the basis for civil liability against the Niesens, and the Nichols did not seek review of that ruling before this court. The court of appeals did, however, allow the Nichols to proceed with their common-law negligence claim against the Niesens.

II

¶ 8. We begin with a discussion of the standard of review. This case is before us in the context of a motion

---

[4] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise indicated. We note that, while the Wisconsin Academy of Trial Lawyers, in an amicus brief, introduced arguments based on Wis. Stat. § 125.07(1)(a)4, the Nichols did not plead a violation of this subsection in any of the three versions of their complaint. Accordingly, such argu-

to dismiss. A motion to dismiss tests the legal suffi-
ciency of the plaintiff's complaint. *Doe v. Archdiocese of
Milwaukee*, 211 Wis. 2d 312, 331, 565 N.W.2d 94 (1997).
When reviewing such a motion, we accept the alleged
facts and the reasonable inferences as true, but we draw
all legal conclusions independently. *Walberg v. St. Fran-
cis Home, Inc.*, 2005 WI 64, ¶ 6, 281 Wis. 2d 99, 697
N.W.2d 36. A complaint should be liberally construed,
and a plaintiff's claims should be dismissed only "if it is
'quite clear' that there are no conditions under which
that plaintiff could recover." *John Doe v. Archdiocese of
Milwaukee*, 2005 WI 123, ¶ 20, 284 Wis. 2d 307, 700
N.W.2d 180 (citations omitted). We review the circuit
court's decision, and that of the court of appeals, de
novo, but we benefit from those decisions. *Id.*, ¶ 19.

### III

¶ 9. On review, the Nichols claim that the Nies-
ens' conduct was negligent, and that it was reasonably
foreseeable that someone drinking on the Niesens'
property would cause an accident. The Nichols argue
that they are not seeking "an expansion of liability as it
relates to alcohol law in Wisconsin." Instead, they
contend that they are "simply asking that the Niesens'
behavior be analyzed against [Wisconsin's] well-
established negligence standard." The Nichols contend
that this case does not merit unique consideration
because alcohol was involved.[5] The Nichols also claim
that public policy factors do not require that the Nies-

---

ments are not properly before this court, and we will not
address them.

[5] The reliance by the Nichols and the Wisconsin Academy of
Trial Lawyers (now, the Wisconsin Association for Justice) in
their respective briefs on *Koback v. Crook,* 123 Wis. 2d 259, 366
N.W.2d 857 (1985), seems somewhat misplaced given that the

25

ens be granted immunity from their alleged negligence, especially because Wisconsin's public policy supports both the reduction of driving while intoxicated and the reduction of underage drinking. The Nichols contend that, if the legislature had wanted to create immunity for conduct like the Niesens' conduct, it would have done so explicitly.

¶ 10. On review, the Niesens argue that knowledge of someone drinking on one's premises does not create a foreseeable risk of harm to others, and that public policy issues preclude liability in cases such as this one. The Niesens argue that the court of appeals created a new basis of liability for social hosts in Wisconsin. They argue that social hosts have never been held liable in Wisconsin solely because they were aware that an underage person had been consuming alcohol. To allow the court of appeals' decision to stand would mean that liability would apply to any social hosts who knew of underage drinking, regardless of where the alcohol was possessed or consumed, which would lead to liability with no sensible stopping point. The Niesens argue that they had limited involvement with the party outside of their alleged knowledge of underage drinking at the party, and, as a result, they

holding of that case was clarified later in 1985 by the passage of Wis. Stat. § 125.035(4)(b). In *Koback,* this court held that furnishing or giving alcoholic beverages to a minor constituted negligence per se and that social hosts were liable to third parties in proportion to the extent to which the provision of alcohol led to the harm. *Koback,* 123 Wis. 2d at 266. The statute eliminated the holding of *Koback* that such actions were negligence per se. Section 125.035(4)(b) stated that providers of alcohol to minors were liable only "if the provider knew or should have known that the underage person was under the legal drinking age" and if the provision of such alcohol was "a substantial factor in causing injury to a 3rd party." Wis. Stat. § 125.035(4)(b).

should not be held liable. To hold social hosts liable in such circumstances would place an unreasonable burden on social hosts. The Niesens argue that a reasonable person would not foresee that knowledge of some unidentified underage person drinking would create an unreasonable risk to others. Rather, a reasonable person would conclude that any such risk was created by the provider of the alcohol and the underage drinker. The Niesens contend that, because they played no role in procuring or furnishing the alcohol, a negligence analysis should not be applied to their actions in this matter. Finally, the Niesens argue that the legislature, not the judiciary, is the branch of Wisconsin's government that should impose any new liability on social hosts who do not provide alcoholic beverages to underage guests.

¶ 11. Whether the Nichols' complaint states a claim for common-law negligence depends on whether they sufficiently pled facts, which if proven true, would establish all four required elements of an actionable negligence claim. *Hoida, Inc. v. M & I Midstate Bank,* 2006 WI 69, ¶ 23, 291 Wis. 2d 283, 717 N.W.2d 17. First, the plaintiff must establish " 'the existence of a duty of care on the part of the defendant . . . .' " *Id.* (citation omitted). Second, the plaintiff must establish that the defendant breached that duty of care. *Id.* Third, the plaintiff must establish " 'a causal connection between the defendant's breach of the duty of care and the plaintiff's injury . . . .' " *Id.* Fourth, the plaintiff must establish that he or she suffered an actual loss or damage that resulted from the breach. *Id.*

¶ 12. However, in Wisconsin, the elements of duty and breach are usually presented to the trier of fact in a question asking whether the defendant was negligent,

and then the elements of causation and damages are addressed. *See* Wis JI—Civil 1005 (2006). Even if a plaintiff adequately establishes all four elements of a common-law negligence claim, Wisconsin courts have "reserved the right to deny the existence of a negligence claim based on public policy reasons . . . ." *Hoida, Inc.,* 291 Wis. 2d 283, ¶ 24. This court is restricted "to applying the policy the legislature has chosen to enact, and [we] may not impose [our] own policy choices." *Fandrey v. Am. Family Mut. Ins. Co.,* 2004 WI 62, ¶ 16, 272 Wis. 2d 46, 680 N.W.2d 345 (citation omitted). As a result, "even if all the elements for a claim of negligence are proved, or liability for negligent conduct is assumed by the court, the court nonetheless may preclude liability based on public policy factors." *Smaxwell v. Bayard,* 2004 WI 101, ¶ 39, 274 Wis. 2d 278, 682 N.W.2d 923 (citation omitted). This is so because " 'negligence and liability are distinct concepts.' " *Hoida, Inc.,* 291 Wis. 2d 283, ¶ 25 (citation omitted).

¶ 13. The first element of a common-law negligence claim requires the plaintiff to establish " 'the existence of a duty of care on the part of the defendant . . . .' " *Id.,* ¶ 23 (citation omitted). The court of appeals noted that foreseeability of harm is an element of the duty of care and not of causation. *Butzow v. Wausau Mem'l Hosp.,* 51 Wis. 2d 281, 286–87, 187 N.W.2d 349 (1971). As this court has stated, "The test of negligence is whether the conduct foreseeably creates an unreasonable risk to others." *Morgan v. Pa. Gen. Ins. Co.,* 87 Wis. 2d 723, 732, 275 N.W.2d 660 (1979) (citations omitted). As a result, the court of appeals held that the appropriate standard to apply to the present case was that "the Niesens owed the Nichols a duty 'to refrain from any act which [would] cause foreseeable

28

harm' to anyone." *Nichols v. Progressive N. Ins. Co.*, No. 2006AP364, unpublished slip op., ¶ 15 (Wis. Ct. App. Jan. 25, 2007). To allege appropriately a duty of care, the Nichols' complaint was required to " 'state general facts setting forth that the [defendant] had knowledge or should have had knowledge of a potential and unreasonable risk . . . .' " *Archdiocese of Milwaukee,* 284 Wis. 2d 307, ¶ 36 (citation omitted).

¶ 14. The court of appeals held that the Nichols had met this standard because they had "alleged that the Niesens knowingly permitted underage persons to drink alcohol on their property prior to the accident between Carr and the Nichols." *Nichols,* No. 2006AP364, unpublished slip op., ¶ 18. That court then stated that a "reasonable inference" from that allegation was that the Niesens "knew some of those underage students would drive away from their property after consuming alcohol." *Id.* The court of appeals then assumed that the Niesens must have known that some of these underaged individuals would drink to the point of intoxication, even though that allegation is not in the Nichols' complaint. *Id.*

¶ 15. The court of appeals framed the issue for the first element of the test for common-law negligence as "whether the Niesens owed a duty to refrain from knowingly permitting minors to consume alcohol on their property, thus enabling them, including Carr, to drive away from their property while intoxicated." *Id.* As a result, the court held that the first factor had been met because "it was reasonably foreseeable that permitting underage high school students to illegally drink alcohol on the Niesens' property would result in harm to some person or something," and because the Nichols had adequately "alleged the Niesens had a duty to refrain from knowingly permitting underage high

29

school students from engaging in illegal alcohol consumption on their property." *Id.,* ¶ 23.

¶ 16. Relying on its analysis of the first factor, the court of appeals also determined that the Nichols had appropriately alleged the second factor of an actionable common-law negligence claim, which is that the Niesens had breached a duty of care that they owed to the Nichols. *Id.,* ¶ 24. The court stated, "Because the Nichols' complaint alleges the Niesens knowingly permitted and failed to supervise underage alcohol consumption on their property, it alleges 'a breach of their duty to exercise ordinary care.' " *Id.* The court of appeals also held that the Nichols' complaint had alleged " 'a causal connection between the defendant's breach of the duty of care and the plaintiff's injury . . . .' " *Id.* (citation omitted).

¶ 17. The court also held that the Nichols had established the third factor of a common-law negligence claim by showing " 'a causal connection between the defendant's breach of the duty of care and the plaintiff's injury . . . .' " *Hoida, Inc.,* 291 Wis. 2d 283, ¶ 23 (citations omitted). That court stated, "The Nichols have sufficiently alleged that the Niesens' permitting underage alcohol consumption on their property was a substantial factor in causing the automobile accident that resulted in their injuries." *Nichols,* No. 2006AP364, unpublished slip op., ¶ 25.

¶ 18. The court of appeals further held that the Nichols had appropriately alleged the fourth factor of a common-law negligence claim, that they had suffered an actual loss or damage that resulted from the Niesens' breach. *Hoida, Inc.,* 291 Wis. 2d 283, ¶ 23. That court was satisfied that the Nichols had alleged an actual loss or damage that resulted from the Niesens' breach "by claiming they were injured in the automobile accident

with Carr." *Nichols,* No. 2006AP364, unpublished slip op., ¶ 25. As a result, the court of appeals decided that the Nichols had established all four required elements of a common-law negligence claim, and it then turned to an analysis of public policy factors, which the court found did not bar the Nichols' common-law negligence claim. *Id.,* ¶¶ 25, 33.

¶ 19. For purposes of our public policy analysis, we will assume, without deciding, that the court of appeals was correct in holding that the Nichols had stated a common-law negligence claim. As we noted previously, even if a plaintiff adequately establishes all four elements of a common-law negligence claim, Wisconsin courts have "reserved the right to deny the existence of a negligence claim based on public policy reasons . . . ." *Hoida, Inc.,* 291 Wis. 2d 283, ¶ 24. As a result, "even if all the elements for a claim of negligence are proved, or liability for negligent conduct is assumed by the court, the court nonetheless may preclude liability based on public policy factors." *Smaxwell,* 274 Wis. 2d 278, ¶ 39. This is so because " 'negligence and liability are distinct concepts.' " *Hoida, Inc.,* 291 Wis. 2d 283, ¶ 25 (citation omitted).

¶ 20. In turning to our analysis of the public policy factors that bear on the Nichols' common-law negligence claim against the Niesens, it is instructive to note what is not alleged by the Nichols. The Nichols do not allege that the Niesens provided alcohol to Carr, that the Niesens were aware that Carr (specifically) was consuming alcoholic beverages, that the Niesens knew or should have known that Carr was intoxicated, or that the Niesens knew or should have known that Carr was not able to drive her motor vehicle safely at the time of the accident. We note that there also is no allegation by the Nichols that the Niesens aided, agreed to assist, or

attempted to aid Carr or any other person in the procurement or consumption of alcohol on premises under their control. There also are no allegations that the Niesens knew in advance that any underage individuals would be drinking.

¶ 21. Whether "public policy considerations preclude liability is a question of law that this court determines without deference to any other court." *Gritzner v. Michael R.*, 2000 WI 68, ¶ 27, 235 Wis. 2d 781, 611 N.W.2d 906 (citation omitted). This analysis may be performed without "a full factual resolution of the cause of action by trial." *Stephenson v. Universal Metrics, Inc.*, 2002 WI 30, ¶ 42, 251 Wis. 2d 171, 641 N.W.2d 158 (citations omitted). If one or more of the public policy "factors so dictates, the court may refuse to impose liability in a case." *Id.*, ¶ 43.

¶ 22. The first public policy factor upon which recovery against a negligent tortfeasor may be denied is when "the injury is too remote from the negligence . . . ." *Stephenson*, 251 Wis. 2d 171, ¶ 43 (citations omitted). Here, it is argued that the Niesens' generalized knowledge that an underage person was drinking on their property was too remote from the automobile accident that was caused by Carr, who procured her alcohol from Shumate before Carr arrived at the Niesens' property. Shumate was never at the Niesens' property, and there is no allegation that the Niesens knew of Carr's condition. The Niesens and their insurer claim that it is reasonable to assume that Carr, who already had illegally obtained her alcohol elsewhere, would have consumed the alcohol with or without the party on the Niesens' property. In response, the Nichols assert that their injuries were directly

connected to Carr's intoxication and that Carr was driving away from the Niesens' property when the accident occurred.

¶ 23. The second public policy factor upon which recovery against a negligent tortfeasor may be denied is when "the injury is too wholly out of proportion to the tortfeasor's culpability . . . ." *Id.* Here, the Niesens and their insurer argue that the injury was wholly out of proportion to the Niesens' culpability. The Nichols made no allegation that underage individuals gathered at the Niesens' property because they knew that the Niesens would let them consume alcohol that was obtained elsewhere. Liability based on the Nichols' theory would be liability based solely on knowledge that someone was drinking, which is a generality and an inference rather than knowledge of specific facts about a specific guest. As a result, they claim that the injury in this case is wholly out of proportion to a social host's liability for the later driving by an unidentified guest who procured her alcohol from someone who was not at the party. In response, the Nichols argue that the Niesens should have foreseen that an automobile accident would occur when an intoxicated teenager drove away from their property.

¶ 24. The third public policy factor upon which recovery against a negligent tortfeasor may be denied is when "in retrospect it appears too highly extraordinary that the negligence should have brought about the harm . . . ." *Id.* Here, the Niesens and their insurer argue that, in retrospect, it was too highly extraordinary that the negligence would have brought about the harm in question. The Nichols did not allege that the Niesens knew that Carr was unfit to drive. In retrospect, they claim that it was highly extraordinary that the Niesens' generalized knowledge that someone, at

33

some point, had been drinking on the property that they controlled should have brought about the accident by Carr, as a result of the alcohol procured from Shumate. In response, the Nichols allege that the injuries they suffered were exactly the types of injuries that should be expected when an underage, intoxicated person operates a motor vehicle.

¶ 25. The fourth public policy factor upon which recovery against a negligent tortfeasor may be denied is when "allowing recovery would place too unreasonable a burden upon the tortfeasor . . . ." *Id.* Here, the Niesens and their insurer argue that allowing recovery against the Niesens in this case would place upon them an unreasonable burden. The Nichols did not allege that the Niesens allowed underage drinking, only that they knew about underage drinking at some point during the evening. Liability for a social host who did not specifically know of the particular person drinking and who did not provide the alcohol places too unreasonable of a burden on that social host. Furthermore, such a requirement would force social hosts to do such things as check identification cards, screen all guests for alcohol consumption, and figure out who is driving and then whether or not those drivers are fit to drive. As here, social hosts cannot be expected to control the consumption of alcohol before or after people are on the property that they control. The Niesens and their insurer claim that the court of appeals' decision places too unreasonable a burden on social hosts, in that the only way for social hosts to avoid liability would be never to allow a gathering on property under their control that includes individuals under the age of 21. In response, the Nichols argue that holding adults accountable for injuries that result from allowing under-

age drinking to occur on their property will discourage such adults from allowing such behavior.

¶ 26. The fifth public policy factor upon which recovery against a negligent tortfeasor may be denied is when "allowing recovery would be too likely to open the way to fraudulent claims . . . ." *Id.* Here, the Niesens and their insurer, BRMIC, argue that there is a likelihood for fraudulent claims, as underage drinkers might testify that they had, at some time, been at a person's property to trigger that person's liability. Regardless of when, how much, or where the underage guest had been drinking or regardless of the source of the alcohol, they claim that a social host will be sued when underage drinkers and their alcohol-providers attempt to shift at least part of their responsibility to the social host. In response, the Nichols assert that such cases are not susceptible to fraud, because there usually will be several witnesses to testify as to what occurred.

¶ 27. The sixth, and here perhaps the most significant, public policy factor upon which recovery against a negligent tortfeasor may be denied is when "allowing recovery would have no sensible or just stopping point . . . ." *Id.* We conclude that this sixth factor is applicable to preclude liability against the Niesens. In *Stephenson,* this court refused on public policy grounds to permit a recovery against a defendant who did not carry through on his promise to drive an intoxicated co-worker home. That co-worker later caused the death of another person in an automobile accident. *Id.,* ¶¶ 41–51. The defendant had made the promise so that the bartender would continue to serve alcohol to his intoxicated co-worker. *Id.,* ¶ 2. While we concluded that the defendant had breached a duty that he owed to the plaintiff by not following through on his promise to drive his intoxicated co-worker home, we held that the

plaintiff's claim should have been dismissed. *Id.*, ¶ 50. We did so because "the possibilities for expanding liability would simply have too much potential to grow out of control," and also would "threaten to run counter to the legislative enactments regarding immunity." *Id.*

¶ 28. Here, the Niesens and their insurer argue that there would be no sensible or just stopping point if the court of appeals' decision stands. They claim that the decision of the court of appeals would put tort law on the path of strict liability for anyone who owns property in Wisconsin, and who knows even scant details of an underage person consuming alcohol on the property under his or her control. They argue that the next step, beyond such a proposed expansion in common-law negligence liability, may be to include in the framework of liability not just social hosts but anyone who knows that an underage person was drinking on property that is not even under their control, or to include anyone, not just property owners, who knows that any underage individual has had too much to drink. We are not persuaded by the Nichols' argument that the facts of this case would limit the dramatic expansion of liability that the Nichols seek.

¶ 29. We note that there is no allegation by the Nichols here that the Niesens knew Carr was intoxicated, impaired, or unable to safely drive a vehicle. The Niesens argue that they could not have foreseen that people coming onto their property, who already had broken the law before they arrived, would break the law again after leaving. The Niesens could not reasonably have foreseen that an underage guest who they were not specifically aware was intoxicated, and who arrived

36

<br>

at the premises under their control with alcohol purchased elsewhere, would cause foreseeable harm to others.

¶ 30. We agree with the Niesens and BRMIC that allowing recovery here would have no sensible or just stopping point. As this court noted in *Stephenson*, allowing liability under such circumstances would provide too much potential for the out of control growth of liability, which would "run counter to the legislative enactments regarding immunity." *Id.*, ¶ 50 (footnote omitted). Liability for injuries that are caused by an underage, intoxicated individual has always been premised upon the affirmative acts of a defendant, such as procuring, furnishing, or dispensing alcohol for that underage individual. Liability has never been premised on the conduct that the Nichols alleged. *See, e.g., id.; Smith v. Kappell,* 147 Wis. 2d 380, 433 N.W.2d 588 (Ct. App. 1988).

¶ 31. If the Nichols' claim were allowed to proceed, the expansion of liability might also include liability for parents who allegedly should have known that drinking would occur on their property while they were absent, based on the proclivities of teenagers in a given area to consume alcohol. Imposing such liability would be only a short step away from imposing strict liability upon property owners for any underage drinking that occurs on property under their control. As Judge David G. Deininger stated in his dissent in the court of appeals, "if liability is permitted to extend to parents and property owners who fail to 'supervise and monitor the activities on their property,' " as the Nichols contend of the Niesens, "then parents or other owners of property occupied by sixteen- to twenty-year-olds" would "be well-advised to never leave home, or if they must, to ensure that all underage persons go elsewhere

as well. I conclude the potential burdens imposed by permitting a recovery on the facts alleged in this case are, as in *Stephenson,* unreasonable and unrealistic." *Nichols,* No. 2006AP364, unpublished slip op., ¶ 44. As a result, even assuming that the Nichols had pled a viable claim for common-law negligence against the Niesens using the four-factor test, we are satisfied that the Nichols' claim should be barred on public policy considerations, since allowing recovery here would have no sensible or just stopping point.

¶ 32. We are satisfied that whether to expand common-law negligence to cover situations like the one alleged here is more appropriately a decision for the legislature rather than for this court. If there is to be such an expansion of common-law negligence to cover facts such as those presented here, that decision, which involves policy choices, should be made by the legislature. We encourage the legislature to address the question of whether to hold social hosts accountable for the types of actions alleged in this case.

¶ 33. We are aware that no prior Wisconsin case has held a social host liable for the results of a guest's intoxication when that social host did not provide the alcohol. Furthermore, Wis. Stat. § 125.035 abrogates immunity only for vendors and social hosts who supply alcohol to underage drinkers. Nothing in the Wisconsin statutes renders the Niesens' conduct unlawful. Liability has never been applied to conduct like that of the Niesens, and liability has required active, direct, and affirmative acts, such as the provision of alcohol. *See, e.g., Stephenson,* 251 Wis. 2d 171, ¶¶ 41–51. Neither the legislature nor this court has expanded liability to social hosts who have not provided alcohol to minors. The legislature is the appropriate governmental branch

38

to expand liability if it desires to do so. As a result, for the reasons stated herein, we reverse the court of appeals, and hold that such an expansion of liability should come from the legislature, if it is to occur at all. We conclude that a claim for common-law negligence cannot be maintained against social hosts who allegedly were aware that minors on their property were consuming alcohol, but who did not provide the alcohol, when an underage guest later was involved in an alcohol-related car accident.

IV

¶ 34. As a final point, we note that the court of appeals' decision could be read as, at least, implicitly suggesting that *Hoida* had overturned or backed away from cases such as *Gritzner*, 235 Wis. 2d 781, ¶ 1, and *Rockweit v. Senecal,* 197 Wis. 2d 409, 541 N.W.2d 742 (1995). *Hoida* was not intended to overturn prior case law, but to resolve the case presented. *See also Baumeister v. Automated Prods., Inc.,* 2004 WI 148, 277 Wis. 2d 21, 690 N.W.2d 1.

¶ 35. For example, the majority in the court of appeals stated that *Hoida* held that "[d]uty has not become just another policy factor. ... In a nutshell, *Hoida* returned Wisconsin negligence law to its pre-*Bowen*[6] analysis . . . ." *Nichols,* No. 2006AP364, unpublished slip op., ¶ 22. The court of appeals did recognize that *Hoida* required, as part of the analysis used in a negligence determination, the application of "public policy factors to the specific facts presented." *Id.,* ¶ 31.

¶ 36. Where the majority in the court of appeals may have caused some confusion in its reading of *Hoida*

---

[6] *Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis. 2d 627, 517 N.W.2d 432 (1994).

is that it seemed to believe that this court had somehow returned to an emphasis on duty and foreseeability as a way of limiting liability in a negligence case. While that has been a legitimate inquiry, liability in negligence cases in Wisconsin more often has been limited by consideration of public policy factors, as shown in the *Rockweit* and *Gritzner* decisions.

¶ 37. In *Hoida,* we held that a subcontractor who incurred losses on a construction project, when the general contractor and the property owner fraudulently misappropriated about $650,000 of the project's construction loan proceeds, had not provided sufficient facts to controvert the defendant-lenders' "prima facie showing that it did not breach the duty of ordinary care under the circumstances . . . ." *Hoida, Inc.,* 291 Wis. 2d 283, ¶ 1. Hoida claimed that the defendant-lenders breached their duty of care by failing to perform certain project oversight tasks that Hoida claimed they were obligated to perform. Hoida argued that such a failure was contrary to the " 'basic industry standards' " of conduct for such lenders, such as verifying that "sufficient work on the project had been completed to 'justify disbursement . . . .' " *Id.,* ¶ 20. Hoida claimed that, by the defendant-lenders failing to perform such tasks, it was "reasonably foreseeable that subcontractors and materialmen [would] be harmed." *Id.*

¶ 38. We disagreed with Hoida's claims and held that Hoida's negligence claim against M&I Midstate Bank was precluded because the bank did not breach the duty of ordinary care under the circumstances. We also held that, "Hoida's negligence claim [against McDonald Title] would be precluded by judicial public policy[,]" even if we were to conclude that McDonald Title had breached its duty of ordinary care under the circumstances. *Id.,* ¶ 2. This court went on to hold that

allowing Hoida's claims "would place too unreasonable a burden on McDonald Title, who acted solely at the direction of M & I." *Id.*, ¶ 43 (citation omitted). We so held in addition to holding that the defendant-lenders did not owe a duty of care to Hoida. *Id.*, ¶¶ 44–45. As noted previously in this decision, a court may preclude a negligence claim on public policy grounds, even if all elements of a negligence claim have been appropriately pled or even if we assume, as we did on some claims in *Hoida*, that a claim has been appropriately pled so that the case can then be decided on public policy grounds.

¶ 39. In *Rockweit*, a young child, Anthony Rockweit, sued an invited guest, Ann Tynan (Tynan), for alleged negligence for failing to extinguish hot embers from a campfire in a fire pit that Anthony Rockweit later fell into, causing him severe injuries. *Rockweit*, 197 Wis. 2d at 413. This court held that, "although Tynan owed Anthony a duty of ordinary care which the jury determined was breached, . . . imposing liability on Tynan in this case would contravene public policy." *Id.* In *Rockweit*, we found that all four elements of a common-law negligence claim had been established. *Id.* We reiterated that the proper analysis under Wisconsin law of the duty of care " 'of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act . . . .' " *Id.* at 419–20.

¶ 40. Rockweit argued that Tynan, being one of the last people to go to bed at the campground that evening "had a duty to extinguish the fire because it was foreseeable to a reasonable person that someone could be hurt if she did not do so." *Id.* at 420. While this court found that Tynan owed Rockweit a duty of care under

41

Wisconsin law, we held that public policy factors precluded liability against Tynan, even though Rockweit had established all four elements of a common-law negligence claim. *Id.* at 425.

¶ 41. We held that " 'once it is determined that a negligent act has been committed and that the act is a substantial factor in causing the harm, the question of duty is irrelevant and a finding of nonliability can be made only in terms of public policy.' " *Id.* (citations omitted). A finding of nonliability on the basis of "public policy is a question of law which the court alone decides." *Id.* (citations omitted). Our decision "to deny liability is essentially one of public policy rather than of duty or causation." *Id.* (citation omitted). We stated that this approach represents the minority viewpoint of *Palsgraf v. Long Island R.R. Co.,* 162 N.E. 99 (N.Y. 1928) (Andrews, J., dissenting), that we adopted in *Pfeifer v. Standard Gateway Theater, Inc.,* 262 Wis. 229, 55 N.W.2d 29 (1952), and *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956). We declined to adopt the "no-duty, no-liability concept of the majority in *Palsgraf.*" *Rockweit,* 197 Wis. 2d at 420.

¶ 42. The *Rockweit* court then listed the six public policy factors described in detail previously in this opinion, and we held that the imposition of liability against Tynan, who did not "start, maintain, or provide any necessary incendiary materials for the fire[,] . . . would place an unreasonable burden upon a guest in Tynan's position." *Id.* at 427. We also noted that Rockweit's injuries were "wholly out of proportion to the alleged culpability of Tynan." *Id.* As a result, imposing liability in such a case "would unnecessarily allow the law of negligence to enter a field that has no sensible or just stopping point." *Id.* at 428.

¶ 43. In *Gritzner*, the parents of a four-year-old girl, Tara, who was sexually abused by a ten-year-old neighbor, Michael, brought suit against Michael's mother and her boyfriend, Roger Bubner (Bubner). *Gritzner*, 235 Wis. 2d 781, ¶ 1. Tara's parents sued Bubner, alleging that he had been entrusted with Tara's care while she was visiting his home, "that Bubner had custody and control of Michael, and that Bubner knew or should have known that Michael might engage in inappropriate sexual acts if left alone with Tara." *Id.*, ¶ 2. Based on these allegations, Tara's parents "brought claims against Bubner for (1) negligent failure to warn them of Michael's propensity to engage in inappropriate sexual acts, and (2) negligent failure to control Michael's conduct." *Id.*

¶ 44. The lead opinion upheld prior caselaw that the claim for negligent failure to warn was not a viable claim, but allowed the negligent failure to control claim to go to trial. *Id.*, ¶ 5. The lead opinion also held that the negligent failure to warn claim was prohibited by public policy considerations, whereas the failure to control claim was not barred by public policy considerations given it could be "imposed on distinct, narrow grounds that do not raise the same public policy considerations that preclude liability for failure to warn." *Id.* Bubner was aware that Michael had "engaged in inappropriate sexual acts with another child or children, including his half-sister." *Id.*, ¶ 7.

¶ 45. In *Gritzner*, we reiterated our position in *Rockweit* that "Wisconsin courts address public policy concerns directly, rather than asking whether the defendant owed a 'duty' to the particular victim." *Id.*, ¶ 24 (footnote omitted). As a result, in a negligence case, a defendant's conduct " 'is not examined in terms of whether or not there is a duty to do a specific act, but

rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances.' " *Id.* (citation omitted).

¶ 46. In *Gritzner,* the lead opinion then looked to the public policy factors described previously in this decision, reiterated the legal conclusions discussed in *Rockweit,* and held that imposing liability for negligent failure to warn would allow liability with no definable and sensible starting or stopping point. *Id.,* ¶¶ 34, 36.

¶ 47. We reiterate that *Gritzner* and *Rockweit* are still good law in Wisconsin. Nothing in *Hoida* was intended to overrule or change the principles of law expressed in *Gritzner* and *Rockweit.* While liability has been limited in a negligence case based on the absence of a duty, liability in the vast majority of negligence cases in Wisconsin is guided, when determining whether to limit liability, by consideration of public policy factors, as *Gritzner* and *Rockweit* demonstrate.

V

¶ 48. We reverse˙ the decision of the court of appeals. Doing so, we hold that, based on public policy grounds, a claim for common-law negligence cannot be maintained against social hosts, such as the Niesens, who allegedly were aware that minors on their property were consuming alcohol, but who did not provide the alcohol, when an underage guest later allegedly caused an alcohol-related car accident. To hold otherwise would be a significant extension of common-law liability. If that is to occur, in this instance, it should be done by the legislature, not by this court.

¶ 49. *By the Court.*—The decision of the court of appeals is reversed.

¶ 50. SHIRLEY S. ABRAHAMSON, C.J. (*concurring*). I agree with the majority opinion that a claim for common law negligence cannot be maintained in the present case. I agree, however, with the reasoning of the circuit court rather than the reasoning of this court: The decision in the present case rests on legislative policy, not on judicial public policy grounds.[1] Although a claim for common law negligence does not require a violation of the statutes, I conclude that Wis. Stat. § 125.07(1)(a)4. should be read as providing a stopping point on the Niesens' liability with respect to underage drinking on their property under the circumstances of the present case.

¶ 51. Wisconsin Stat. § 125.07(1)(a)4. provides that "no adult may intentionally encourage or contribute to a violation of sub. (4)(a) or (b)." When § 125.07(1)(a)4. is read together with (4)(a) and (b), the statute (relevant to the facts of the instant case) declares that no adult may intentionally encourage or contribute to an underage person procuring alcohol beverages from a licensee or permittee or intentionally encourage or contribute to an underage person knowingly possessing or consuming alcohol beverages. Any adult violating this statute may be subject to a civil forfeiture or convicted of a misdemeanor.

¶ 52. The complaint alleges that the Niesens were negligent. It does not allege that the Niesens intentionally encouraged or contributed to an underage person procuring alcohol beverages from a licensee or permit-

---

[1] Wisconsin Stat. § 125.035(4)(b) provides that a provider is not immune from civil liability if the provider of alcohol beverages knew or should have known that the underage person was under the legal drinking age and if the alcohol beverages provided to the underage person were a substantial factor in causing injury to a third party.

tee or intentionally encouraged or contributed to an underage person knowingly possessing or consuming alcoholic beverages.[2]

¶ 53. Although the statutes do not bar all negligence causes of action relating to adult behavior, alcohol beverages, and underage persons, Wis. Stat. § 125.07(1)(a)4., in my opinion, provides a "sensible and just stopping point" to the Niesens' liability under the circumstances set forth in the complaint in the instant case relating to underage drinking on the Niesens' property.

¶ 54. I write further to express my reservations about the court of appeals' sketchy analysis of Wis. Stat. § 125.07(1)(a)3. in its decision in the present case and its dismissal of the Niesens' complaint alleging a cause of action under § 125.07(1)(a)3.

¶ 55. The complaint alleges that the Niesens knowingly permitted and failed to prevent the illegal consumption of alcohol beverages by underage persons on premises under their control "contrary to Section 125.07(1)(a)3."

¶ 56. Section 125.07(1)(a)3. prohibits an adult from "knowingly permit[ting] or fail[ing] to take action to prevent the illegal consumption of alcohol beverages by an underage person on *premises* owned by the adult or under the adult's control" (emphasis added). The court of appeals concluded that this section does not apply in the present case because "premises" is defined

---

[2] The complaint alleges that the Niesens were negligent in failing "to take reasonable steps to supervise and monitor the activities on their property, which on information and belief included a large group of minors consuming alcohol. On information and belief the Niesens were aware that the minors on their property were consuming alcohol."

in § 125.02 as the area described in a municipal license authorizing the sale of alcohol beverages or in a Department of Revenue permit issued under chapter 125 (the chapter governing alcohol beverages).[3] The Niesens' property is not an area described in such a license or permit.

¶ 57. Although the parties do not raise this issue before this court, it is arguable that the word "premises" in Wis. Stat. § 125.07(1)(a)3. is not used, as the court of appeals held, in its defined meaning to be an area described in a municipal license authorizing the sale of alcohol beverages or in a Department of Revenue permit issued under chapter 125. The word "premises" in § 125.07(1)(a)3. is limited to premises owned by an adult or under the adult's control, and the last sentence of § 125.07(1)(a)3. provides as follows: "This subdivision does not apply to alcohol beverages used exclusively as part of a religious service."[4]

¶ 58. If the word "premises" in Wis. Stat. § 125.07(1)(a)3. means an area described in a municipal license authorizing the sale of alcohol beverages or in a Department of Revenue permit issued under chapter 125, rather than property, as the court of appeals concludes, why would the legislature explicitly prohibit an adult from knowingly permitting or failing to prevent

---

[3] Wisconsin Stat. § 125.02(14m) defines "premises" to mean "the area described in a license or permit." Section 125.02(9) defines "license" to mean "an authorization to sell alcohol beverages issued by a municipal governing body under this chapter." Section 125.02(13) defines "permit" to mean "any permit issued by the [Department of Revenue] under this chapter."

[4] According to the Wisconsin Legislative Reference Bureau's Bill Drafting Manual, § 3.01 at 63 (2007–2008), the word "subdivision" refers to 3. of § 125.07(1)(a).

the illegal consumption of alcohol beverages by underage persons on premises under the adult's control and also explicitly state that the prohibition does not apply to alcohol beverages used exclusively as part of a religious service? The court of appeals' interpretation of § 125.07(1)(a)3. is puzzling.

¶ 59. Moreover, Wis. Stat. § 125.07(1)(a)3. appears to be the only provision within § 125.07 in which the legislature has used the word "premises" without modifying it. Elsewhere in § 125.07, the legislature denotes licensed or permitted premises.[5] If the legislature intended for the word "premises" in § 125.07(1)(a)3. to mean licensed or permitted premises, why wouldn't the legislature have said so as it did throughout the remainder of § 125.07?

¶ 60. When Wis. Stat. § 125.07(1)(a)3. is read in context and in its entirety, the word "premises" in § 125.07(1)(a)3. seems to mean property, not an area described in a municipal license authorizing the sale of alcohol beverages or in a Department of Revenue permit issued under chapter 125. This reading of § 125.07(1)(a)3. gives meaning to all the words of the statute.

---

[5] *See* Wis. Stat. § 125.07(3)(a) (regulating underage persons' right to enter, knowingly attempt to enter, or be on "premises for which a license or permit for the retail sale of alcohol beverages has been issued"); Wis. Stat. § 125.07(3)(b) (specifying a forfeiture penalty for a licensee or permittee who permits an underage person to enter or be on "a licensed premises"); Wis. Stat. § 125.07(4)(a)2. (making it a violation for an underage person to possess or consume alcohol beverages "on licensed premises" unless the underage person is accompanied by a parent, guardian or spouse who is not underage); Wis. Stat. § 125.07(4)(a)3. (making it a violation for an underage person to enter, knowingly attempt to enter "licensed premises" in violation of § 125.07(3)(a)).

¶ 61. For the reasons set forth, I concur in the mandate.

¶ 62. I am authorized to state that Justice LOUIS B. BUTLER, JR. joins this opinion.