Kenneth W. Hornback, Dennis L. Bolton, Ronald W. Kuhl, David W. Schaeffer and Glenn M. Bonn, Plaintiffs-Appellants-Petitioners,

v.

Archdiocese of Milwaukee and Diocese of Madison, Defendants-Respondents,

Commercial Union Insurance Company, Intervening Defendant.

Supreme Court

*No. 2006AP291. Oral argument March 13, 2008. —Decided July 16, 2008.*

2008 WI 98

(Also reported in 752 N.W.2d 862.)

294

298

For the plaintiffs-appellants-petitioners there were briefs filed by *James S. Smith, Wendy G. Gunderson,* and *Smith, Gunderson & Rowen, S.C.,* Brookfield, and *J. Andrew White* and *J. Andrew White & Associates,* Louisville, Ky., and oral argument by *Marci A. Hamilton,* appearing Pro Hac Vice.

For the defendant-respondent, Archdiocese of Milwaukee, there was a brief by *John A. Rothstein, David P. Muth,* and *Quarles & Brady LLP,* Milwaukee, and oral argument by *John A. Rothstein.*

For the defendant-respondent, Diocese of Madison, there was a brief by *Donald L. Heaney, Kenneth B. Axe, Carrie Benedon,* and *Lathrop & Clark LLP,* Madison, and oral argument by *Donald L. Heaney.*

¶ 1. LOUIS B. BUTLER, JR., J. Kenneth W. Hornback, Dennis L. Bolton, Ronald W. Kuhl, David W. Schaeffer and Glenn M. Bonn (the plaintiffs) seek review of a court of appeals decision[1] that affirmed the circuit court's dismissal of the plaintiffs' complaint against the Archdiocese of Milwaukee (the Archdiocese) and the Diocese[2] of Madison (the Diocese), along with their insurance companies.

¶ 2. The plaintiffs' complaint against the Archdiocese and the Diocese alleged that the plaintiffs were sexually abused by Gary R. Kazmarek from 1968 to 1973, during the time when Kazmarek taught at Our Mother of Sorrows School in Louisville, Kentucky. Kazmarek had previously taught at Catholic schools in Milwaukee and Middleton run by the Archdiocese and Diocese, and the plaintiffs claimed the Archdiocese and the Diocese "knew or should have known of Kazmarek's propensity for sexually abusing children," and were negligent for failing to take certain steps to prevent Kazmarek's future sexual abuse. In oral argument to this court, plaintiffs specified that their claims included a negligent failure to warn unforeseeable third parties of Kazmarek's propensity for sexual abuse.

¶ 3. A significant difference between the plaintiffs' claims against the Archdiocese and the Diocese is that the plaintiffs' complaint alleges that when the sexual abuse of students in Milwaukee was brought to

---

[1] *Hornback v. Archdiocese of Milwaukee,* No. 2006AP291, unpublished slip op. (Wis. Ct. App. Nov. 28, 2006).

[2] Although the plaintiffs alternatively refer to the Diocese of Madison as an "Archdiocese," their caption correctly identifies it as the "Madison Diocese," which is also the title most frequently used by the parties in this case, and the title we will use. The correct title of the Diocese of Madison is not at issue and has no substantive bearing on our decision.

the attention of the Archdiocese of Milwaukee, the Archdiocese promised two dozen of the victims' parents "that Kazmarek would be sent to a treatment center and that he would never have contact with children again," and "pleaded with parents to not report Kazmarek's crimes to the police." However, the complaint alleges, instead of subsequently referring Kazmarek to the police or alerting others about the abuse, the Archdiocese simply told Kazmarek "to leave Milwaukee quietly." Similar claims were not alleged as to the Diocese.

¶ 4. In a response to motions to dismiss brought by the Archdiocese and Diocese, the circuit court, the Honorable Francis T. Wasielewski presiding, dismissed the complaint as to both. The court of appeals affirmed the circuit court order.

¶ 5. This court is equally divided on whether to affirm or reverse the decision of the court of appeals' dismissing the plaintiffs' complaint against the Archdiocese of Milwaukee. Justice N. Patrick Crooks, Justice Patience D. Roggensack, and Justice Annette Kingsland Ziegler would affirm; Chief Justice Shirley S. Abrahamson, Justice Ann Walsh Bradley, and Justice Louis B. Butler would reverse.[3] Consequently, we affirm the court of appeals' decision to affirm the circuit court's dismissal of the plaintiffs' claims against the Archdiocese of Milwaukee, without further analysis of that issue.

¶ 6. In addition, we do not reach the statute of limitations question in this case regarding the dismissal of claims against the Diocese of Madison because we conclude that the plaintiffs have failed to articulate a claim upon which relief could be granted, rendering our consideration of the statute of limitations issue unnec-

---

[3] Justice David T. Prosser did not participate in this case.

essary. We further conclude that the plaintiffs have not alleged an actionable claim for negligence against the Diocese under which relief could be granted under Wisconsin law. We finally conclude that even if a viable negligence claim had been made, recovery would nonetheless be precluded on the public policy ground that allowing recovery would send this court down a slippery slope with no sensible or just stopping point. We therefore affirm the decision of the court of appeals, on different grounds.

I

¶ 7. On October 3, 2005, the plaintiffs filed a complaint against the Archdiocese of Milwaukee, the Diocese of Madison, and their insurance companies. In the complaint, each of the plaintiffs alleges being a child victim of sexual abuse at some point between the years of 1968 and 1973 at the hands of Gary Kazmarek, who was a teacher at the Catholic school the plaintiffs attended in Louisville, Kentucky, Our Mother of Sorrows. The complaint describes an ongoing pattern of sexual abuse of children by Kazmarek over the years. The plaintiffs allege that prior to 1964, he had engaged in inappropriate sexual conduct while at a Catholic seminary; that between 1964 and 1966, he abused more than two dozen children while a teacher at St. John de Nepomuc School in the Milwaukee Archdiocese; that he subsequently admitted to sexually abusing up to ten more children at St. Bernard School in the Madison Diocese; and that the pattern of sexual abuse continued while he was a teacher at Our Mother of Sorrows for approximately five years, beginning in 1967.

¶ 8. The complaint alleges that the Diocese "knew or should have known of Kazmarek's propensity for sexually abusing children and, despite this knowledge,

did not refer Kazmarek to the police or take any other action to prevent Kazmarek from continuing his pattern of sexually abusing children." The complaint further alleges that the failure of the Diocese to refer Kazmarek to the police and/or to take "other action to prevent Kazmarek's continuation of his pattern of sexually abusing children"[4] constitutes negligence, and that the Diocese's negligent conduct was a substantial factor in causing Kazmarek's sexual abuse of and resulting injuries to the plaintiffs. The complaint adds that discovery of Kazmarek's sexual abuse of children in Wisconsin and of the Diocese's negligent conduct did not occur until October 2002.

¶ 9. The Archdiocese filed a motion to dismiss parallel claims against it on October 21, 2005, arguing that the plaintiffs' claims were barred by the statute of limitations. In the alternative, the Archdiocese argued that public policy considerations regarding the delay in bringing this case preclude the liability for the plaintiffs' claims, maintaining that such public policy concerns "strongly militate against permitting 32 year old claims based on alleged assaults, where most other witnesses and relevant evidence are dead." On October 27, 2005, the Diocese also filed a motion to dismiss, adopting the Archdiocese's memorandum in support of dismissal.

¶ 10. The plaintiffs responded that the motions to dismiss should be denied because the plaintiffs' claims were not barred by the statute of limitations and

---

[4] At oral argument to this court, the plaintiffs specified that such negligence in failing to take other action specifically included a negligent failure to warn unforeseeable third parties —including "other dioceses within the United States, the parochial school systems . . . or the parents of unforeseeable victims"—of Kazmarek's propensity for sexual abuse.

because public policy favors litigation of the issues presented in the case rather than encouraging the concealment of information by employers about sexual abusers in their midst.

¶ 11. The circuit court held a motion hearing on December 19, 2005. In a ruling based on statute of limitations grounds, the court granted the defendants' motions to dismiss, and an order dismissing the case was filed on January 4, 2006.

¶ 12. The plaintiffs appealed, and on November 28, 2006, the court of appeals affirmed the circuit court's order, also confining its discussion to the statute of limitations issue. *Hornback v. Archdiocese of Milwaukee*, No. 2006AP291, unpublished slip op. (Wis. Ct. App. Nov. 28, 2006). Review was granted on October 11, 2007.

II

■

¶ 13. "A motion to dismiss for failure to state a claim 'tests the legal sufficiency of the complaint.' " *John Doe 67C v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 19, 284 Wis. 2d 307, 700 N.W.2d 180. We review a circuit court's dismissal of a complaint for failure to state a claim de novo. *Id.* Without drawing unreasonable interferences from the pleadings, we will accept as true the facts pled in the complaint for purposes of review. *See id.*, ¶¶ 19–20.

■

¶ 14. Whether Wisconsin courts recognize an alleged duty and how far the scope of such a duty extends may be questions of law determined judicially rather than questions of fact. *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶ 23 n.12, 291 Wis. 2d 283, 717 N.W.2d 17.

304

¶ 15. Whether a defendant failed to exercise ordinary care and is negligent as a matter of law (" 'i.e., based on the facts presented, no properly instructed, reasonable jury could find the defendant [exercised] ordinary care' ") is a question of law. *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶ 60, 236 Wis. 2d 435, 613 N.W.2d 142 (citations omitted). As with our review of the legal sufficiency of a complaint, the determination of whether public policy considerations preclude liability in a negligence case is also a question of law that this court determines without deference to any other court. *See Gritzner v. Michael R.*, 2000 WI 68, ¶ 27, 235 Wis. 2d 781, 611 N.W.2d 906.

## III

¶ 16. In Wisconsin, the sufficiency of a negligence claim depends on whether a complaint alleges facts adequately establishing the following four required elements: "(1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's injury, and (4) actual loss or damage resulting from the injury." *Gritzner,* 235 Wis. 2d 781, ¶ 19 (citing *Miller v. Wal-Mart Stores, Inc.,* 219 Wis. 2d 250, 260, 580 N.W.2d 233 (1998); *Rockweit v. Senecal,* 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995)). The first two elements, duty and breach, are often presented to juries in the form of a question about whether the defendant was negligent, with the causation and damages questions asked separately. *See Nichols v. Progressive N. Ins. Co.,* 2008 WI 20, ¶ 12, 308 Wis. 2d 17, 746 N.W.2d 220 (citing Wis JI—Civil 1005 (2006)).

¶ 17. In *Nichols,* we stated that the court of appeals' decision in that case

> could be read as, at least, implicitly suggesting that *Hoida* had overturned or backed away from cases such as *Gritzner,* 235 Wis. 2d 781, ¶ 1, and *Rockweit v. Senecal,* 197 Wis. 2d 409, 541 N.W.2d 742 (1995). *Hoida* was not intended to overturn prior case law, but to resolve the case presented. *See also Baumeister v. Automated Prods., Inc.,* 2004 WI 148, 277 Wis. 2d 21, 690 N.W.2d 1.

> For example, the majority in the court of appeals stated that *Hoida* held that "[d]uty has not become just another policy factor. . . . In a nutshell, *Hoida* returned Wisconsin negligence law to its pre-*Bowen* [*Bowen v. Lumbermens Mut. Cas. Co.,* 183 Wis. 2d 627, 517 N.W.2d 432 (1994)] analysis. . . . " *Nichols,* No. 2006AP364, unpublished slip op., ¶ 22. The court of appeals did recognize that *Hoida* required, as part of the analysis used in a negligence determination, the application of "public policy factors to the specific facts presented." *Id.,* ¶ 31.

> Where the majority in the court of appeals may have caused some confusion in its reading of *Hoida* is that it seemed to believe that this court had somehow returned to an emphasis on duty and foreseeability as a way of limiting liability in a negligence case. While that has been a legitimate inquiry, liability in negligence cases in Wisconsin more often has been limited by consideration of public policy factors, as shown in the *Rockweit* and *Gritzner* [lead opinion[5]] decisions.

---

[5] A majority of this court agreed with the failure to warn holding of Chief Justice Abrahamson's concurrence in *Gritzner,* rather than the lead opinion's public policy approach to failure to warn. *See Gritzner v. Michael R.,* 2000 WI 68, ¶ 86, 235 Wis. 2d 781, 611 N.W.2d 906 (Abrahamson, C.J., concurring).

306

In *Hoida*, we held that a subcontractor who incurred losses on a construction project, when the gen eral contractor and the property owner fraudulently misappropriated about $650,000 of the project's construction loan proceeds, had not provided sufficient facts to controvert the defendant-lenders' "prima facie showing that it did not breach the duty of ordinary care under the circumstances. . . . " *Hoida, Inc.*, 291 Wis. 2d 283, ¶ 1. Hoida claimed that the defendant-lenders breached their duty of care by failing to perform certain project oversight tasks that Hoida claimed they were obligated to perform. Hoida argued that such a failure was contrary to the " 'basic industry standards' " of conduct for such lenders, such as verifying that "sufficient work on the project had been completed to 'justify disbursement. . . . ' " *Id.*, ¶ 20. Hoida claimed that, by the defendant-lenders failing to perform such tasks, it was "reasonably foreseeable that subcontractors and materialmen [would] be harmed." *Id.*

We disagreed with Hoida's claims and held that Hoida's negligence claim against M & I Midstate Bank was precluded because the bank did not breach the duty of ordinary care under the circumstances. We also held that, "Hoida's negligence claim [against McDonald Title] would be precluded by judicial public policy[,]" even if we were to conclude that McDonald Title had breached its duty of ordinary care under the circumstances. *Id.*, ¶ 2. This court went on to hold that allowing Hoida's claims "would place too unreasonable a burden on McDonald Title, who acted solely at the direction of M & I." *Id.*, ¶ 43. We so held in addition to holding that the defendant-lenders did not owe a duty of care to Hoida. *Id.*, ¶¶ 44–45. As noted previously in this decision, a court may preclude a negligence claim on public policy grounds, even if all elements of a negligence claim have been appropriately pled or even if we assume, as we did on some claims in *Hoida,* that a claim has been appropriately pled so that the case can then be decided on public policy grounds.

*Nichols,* 308 Wis. 2d 17, ¶¶ 34–38 (citations omitted).

¶ 18. As we summarized the law in *Nichols,* we said that although "liability has been limited in a negligence case based on the absence of a duty, liability in the vast majority of negligence cases in Wisconsin is guided, when determining whether to limit liability, by consideration of public policy factors, as *Gritzner* [lead opinion] and *Rockweit* demonstrate." *Id.,* ¶ 47.

¶ 19. Negligence and liability are two distinct concepts. *See Hoida,* 291 Wis. 2d 283, ¶ 25. Even if the elements of negligence are established or assumed in a case, liability is not guaranteed, but may still be restricted by Wisconsin courts on the basis of judicially recognized policy factors. *Id.,* ¶ 24 (citing *Smaxwell v. Bayard,* 2004 WI 101, ¶ 39, 274 Wis. 2d 278, 682 N.W.2d 923). Even though we can consider the public policy factors to preclude liability, such an analysis generally first requires a determination of whether the elements of negligence have been sufficiently alleged, or at least an assumption that negligence exists. *See Nichols,* 308 Wis. 2d 17, ¶¶ 18, 19.

¶ 20. In this case, we proceed to first examine the claims under a standard motion to dismiss inquiry focusing on the elements of the claim alleged. For the reasons below, we conclude that the plaintiffs have not set forth a claim against the Diocese upon which relief may be granted because the plaintiff has not alleged that the defendant has failed to exercise ordinary care under the circumstances of the case; the failure to warn alleged by the plaintiffs does not constitute negligence in the instant case. We then separately examine whether, even assuming negligence had been sufficiently claimed, public policy factors would nonetheless preclude liability.

A

¶ 21. As a starting point of a negligence analysis, we recognize in Wisconsin that everyone has a duty to act with reasonable and ordinary care under the circumstances. *See Hoida,* 291 Wis. 2d 283, ¶ 30. This "first element, a duty of care, is established under Wisconsin law whenever it was foreseeable to the defendant that his or her act or omission to act might cause harm to some other person." *Gritzner,* 235 Wis. 2d 781, ¶ 20 (citations omitted).

¶ 22. Our state's recognition of a general duty to act with ordinary care, following the famous minority opinion of *Palsgraf v. Long Island Railroad Co.,* is that "[everyone] owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others." *Palsgraf v. Long Island R.R. Co.,* 162 N.E. 99, 103 (N.Y. 1928) (Andrews, J., dissenting). *See also Alvarado v. Sersch,* 2003 WI 55, ¶ 13, 262 Wis. 2d 74, 662 N.W.2d 350. Thus, as we explained in *Gritzner,*

> Wisconsin does not follow the majority view in *Palsgraf* . . . under which the existence of a duty of care depends upon whether injury to the particular victim was foreseeable. *See Schilling v. Stockel,* 26 Wis. 2d 525, 531, 133 N.W.2d 335 (1965)(discussing this court's adoption and subsequent rejection of the majority "noduty" formula in *Palsgraf*).

*Gritzner,* 235 Wis. 2d 781, ¶ 20 n.3. This general duty has also been described as an "obligation of due care to refrain from any act which will cause foreseeable harm to others even though the nature of that harm and the

identity of the harmed person or harmed interest is unknown at the time of the act." *A.E. Inv. Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 483, 214 N.W.2d 764 (1974). Under this framework, a person is negligent " 'if the person, without intending to do harm does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.' " *Alvarado,* 262 Wis. 2d 74, ¶ 14 (quoting *Gritzner,* 235 Wis. 2d 781, ¶ 22; Wis JI—Civil 1005).

¶ 23. The more specific component of a standard negligence inquiry involves whether there has been a breach of that ordinary care under the circumstances of the case. As we explained in *Hoida,* "what is comprised within ordinary care may depend on ... whether the alleged tortfeasor assumed a special role in regard to the injured party." *Hoida,* 291 Wis. 2d 283, ¶ 32. In *Gritzner,* we recognized that the specific type of negligence alleged, a negligent failure to warn, "depending on the circumstances, may be a breach of the duty of ordinary care." *See Gritzner,* 235 Wis. 2d 781, ¶ 76 (Abrahamson, C.J., concurring).

¶ 24. Thus, in the vast majority of cases, whether a defendant has acted negligently " 'is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satisfied the duty placed upon individuals to exercise that degree of care as would be exercised by a reasonable person under the circumstances.' " *Nichols,* 308 Wis. 2d 17, ¶ 45. *See also Schuster v. Altenberg,* 144 Wis. 2d 223, 238 n.3, 424 N.W.2d 159 (1988)(citations omitted):

> Under Wisconsin's broad definition of duty, we need not engage in analytical gymnastics to arrive at

310

our result by first noting that at common law, a person owes no duty to control the conduct of another person or warn of such conduct, and then finding exception to that general rule where the defendant stands in a special relationship to either the person whose conduct needs to be controlled or in a relationship to the foreseeable victim of the conduct.

¶ 25. In this case, the plaintiffs' complaint alleges that the elements constituting negligence include the facts that the Diocese "knew or should have known of Kazmarek's propensity for sexually abusing children and, despite this knowledge, did not refer Kazmarek to the police or take any other action to prevent Kazmarek from continuing his pattern of sexually abusing children."

¶ 26. The plaintiffs' description of the "other action" the Diocese failed to take, thereby constituting negligence, has varied. In their brief to this court, the plaintiffs alleged that the Diocese:

(1) knew or should have known of the dangerous propensities of Kazmarek, (2) attempted to conceal the sexual assaults from authorities, (3) represented to parents that Kazmarek would be sent for treatment, [and] (4) represented to parents [that] Kazmarek would never have contact with children again, yet despite this knowledge and these representations, failed to report Kazmarek to authorities, send him for treatment, or take any other action consistent with their duty of care.

However, during oral arguments, the plaintiffs acknowledged that it had been the Milwaukee Archdiocese only that had, as the complaint claims, made representations that Kazmarek would be sent for treatment, and that he would never have contact with children again. The plaintiffs asserted at oral argument

311

that it made no difference to their negligence claim that only the Archdiocese had made an affirmative promise, because the specific breach of duty claim they allege in this case emanated from the knowledge that both the Diocese and Archdiocese had of Kazmarek's propensity. The plaintiffs then reframed their negligence claim, clarifying that the complaint's reference to a failure to take "other action" is, more specifically, a failure to warn unforeseeable third parties—including "other dioceses within the United States, the parochial school systems . . . or the parents" of unforeseeable victims—of Kazmarek's propensity for sexual abuse.

¶ 27. Viewing the complaint in conjunction with the plaintiffs' clarification of their arguments during oral argument, we conclude that the plaintiffs' negligence claim is premised on an alleged failure to warn unforeseeable third parties, including any potential future employers of Kazmarek at dioceses and parochial school systems everywhere in the country, as well as parents of unforeseeable victims.[6]

¶ 28. Incorporating the arguments made in the Archdiocese's brief to this court, the Diocese argues that common law tort rules do not impose a duty on employers to seek out and disclose information to an employee's subsequent employers or the public at large concerning a former employee's history of misconduct or antisocial behavior. The Diocese argues that under the law of "negligent referral or duty to warn," unless an

---

[6] During oral argument, upon conceding that it was the Archdiocese of Milwaukee only and not the Diocese of Madison that made affirmative promises to report Kazmarek to the police and keep him from children, and upon reframing the claimed breach of duty as a failure to warn dioceses, schools and parents, the plaintiffs also appeared to drop their claim that the failure to report Kazmarek to the police also constituted negligence.

312

employer gives a favorable reference to a subsequent employer or third party about the former employee while withholding negative information, there is no breach of duty established by the employer's failure to seek out subsequent employers and alert them to prior negative history of the former employee.

¶ 29. Although acknowledging that this has not been expressly adopted in Wisconsin case law, the Diocese cites as an analogous case *Mackenzie v. Miller Brewing Co.,* 2000 WI App 48, 234 Wis. 2d 1, 608 N.W.2d 331, in which the court of appeals declined to recognize a duty of employers to disclose to employees possible negative corporate events and developments. The Diocese suggests that in Wisconsin, we should follow the rationale of a California negligent referral case, *Randi W. v. Muroc Joint Unified School District,* 929 P.2d 582, 591–93 (Cal. 1997), and recognize that absent a positive job reference, mere knowledge of an employee's negative personal history is not enough to create a duty of notification to subsequent employers. As such, in this case, there should be no such duty imposed on the defendants, argues the Diocese, considering how far removed the plaintiffs are from the relationships between Kazmarek and the Diocese of Madison. The Diocese emphasizes that it never spoke to the Archdiocese of Louisville about Kazmarek, that the plaintiffs never allege such communication occurred, and that there is therefore no negligence under these circumstances.

¶ 30. The plaintiffs respond that this case fits squarely within the duty of ordinary care all persons owe one another, and should be guided by passages from two specific Wisconsin precedents addressing negligent failure to warn, *Gritzner,* 235 Wis. 2d 781, ¶¶ 23, 43, and *Schuster,* 144 Wis. 2d at 235. The plaintiffs argue

313

that because the Diocese in this case knew Kazmarek abused up to ten children at one of its schools, it should have deduced Kazmarek's continued danger to other children; and that its failure to warn constituted negligence.

¶ 31. A proper analysis of this issue is framed in terms of the ordinary care all persons owe one another under the circumstances, as opposed to a particular "duty to warn." However, we also recognize that in some cases, the failure to warn may be a breach of duty of ordinary care. *Gritzner*, 235 Wis. 2d 781, ¶ 76 (Abrahamson, C.J., concurring).

¶ 32. We conclude that the third party failure to warn claims recognized in this state do not encompass the type of failure to warn claimed by the plaintiffs. We do not decide today whether to adopt the negligent referral approach of *Randi W.* We emphasize that even if we did recognize such negligent referral claims, the general rule under *Randi W.* is that employers who actively provide recommendations of employees "should *not* be held accountable to third persons for failing to disclose negative information regarding a former employee. . . . " *Randi W.*, 929 P.2d at 584 (emphasis added). *Randi W.* provides only a narrow exception allowing that tort liability for fraud or negligent misrepresentation may be created "if, as alleged here, the recommendation letter amounts to an *affirmative misrepresentation* presenting a foreseeable and substantial risk of physical harm to a third person." *Id.*[7] (Emphasis in original.)

---

[7] In *Randi W.*, an employer alleged to have knowingly concealed material facts about a past employee's sexual misconduct with students wrote a letter of reference for the employee that "allegedly extolled Gadams's [the employee's] 'genuine concern' for and 'outstanding rapport' with students, knowing that Gadams had engaged in inappropriate physical contact

¶ 33. We observe that *Randi W.* has been criticized by some as going too far in extending liability in employer warning contexts. *See* J. Bradley Buckhalter, *Speak No Evil: Negligent Employment Referral and the Employer's Duty to Warn (Or, How Employers Can Have Their Cake and Eat it Too)*, 22 Seattle U. L. Rev. 265, 267 (1998)("The [*Randi W.*] decision both generated academic debate and triggered dismayed commentary in legal trade journals.")(citations omitted). In contrast with *Randi W.*'s approach recognizing tort claims for employers' failure to disclose information about past employees, most states stand by a traditional "no duty to act" approach in employment referral contexts. *See id.* at 274.

¶ 34. In this case, no affirmative misrepresentation of the type recognized under a negligent referral analysis has been alleged, let alone any type of communication about Kazmarek from the Diocese of Madison to the Archdiocese of Louisville. The Diocese's mere knowledge of Kazmarek's past sexual abuse, or a presumed knowledge of a continued sexual propensity for abuse, is not enough to establish negligence. Reasonable and ordinary care does not require the Diocese to notify all potential subsequent employers within dioceses and parochial school systems across the country, along with all parents of future unforeseeable victims. Requiring such notification under these circumstances would create a vast obligation dramatically exceeding any approach to failure to warn recognized either in this state or in other jurisdictions.

---

with them. [The former employer] declared in the letter that he 'wouldn't hesitate to recommend Mr. Gadams for any position!' " *Randi W. v. Muroc Joint Unified Sch. Dist.*, 929 P.2d 582, 592–93 (Cal. 1997).

315

¶ 35. As to the plaintiffs' reliance on *Gritzner* and *Schuster*, it is true that these cases affirm the potential viability of negligent failure to warn claims, but they do so in different contexts. *See Gritzner*, 235 Wis. 2d 781, ¶¶ 1–9; *Schuster*, 144 Wis. 2d at 226–29, 263. The failure to warn is not without limitations and parameters. This court's recognition of such potential claims in *Gritzner* included the disclaimer, "[f]ailure to warn, *depending on the circumstances,* may be a breach of the duty of ordinary care." *Gritzner*, 235 Wis. 2d 781, ¶ 76 (emphasis added)(Abrahamson, C.J. concurring).

¶ 36. In *Gritzner*, this court was confronted with the question of whether the defendant had negligently failed to warn the plaintiffs of a third party's propensity toward sexual abuse. *Id.*, ¶ 2. *Gritzner* involved the sexual abuse of a four-year-old girl by her neighbor Michael, who himself was ten years old. *Id.*, ¶ 1. The plaintiffs in the case were the girl's parents, who sued a caretaker of the boy (Roger Bubner, the live-in boyfriend of the boy's mother) for failure to control Michael and failure to warn the girl's parents of the boy's propensity for inappropriate sexual acts. *Id.*, ¶¶ 1–2.

¶ 37. Although the plaintiffs in *Gritzner*, as in this case, alleged a negligent failure to warn of a known propensity for sexual abuse, there are critical differences between *Gritzner* and this case. The complaint in *Gritzner* alleged in relevant part that Bubner knew of previous inappropriate sexual acts by Michael, including acts with his half-sister, and that Bubner knew or should have known that Michael would engage in inappropriate sexual acts again if left unsupervised with the girl. *Id.*, ¶¶ 7, 9. In this case, there was no comparable allegation of such knowledge that Kazmarek would engage in sexual abuse again, either generally or toward the plaintiffs specifically. The only

316

knowledge attributed to the Diocese by the complaint in this case is that it "knew or should have known of Kazmarek's propensity for sexually abusing children."

¶ 38. More importantly, in this case, the specific victims were unforeseeable. Foreseeability of specific victims becomes relevant when an affirmative obligation is argued, such as the obligation to warn. *See Hoida,* 291 Wis. 2d 283, ¶¶ 32, 34. Moreover, the Diocese did not assume a special role in regard to the injured parties.

¶ 39. Thus, the rationale in *Gritzner* for recognizing a potential negligence failure to warn claim does not extend to this case in part because there is no direct contact of any sort alleged between the plaintiffs and defendants in this case.

¶ 40. Furthermore, although parents may have a duty to warn other parents when there is a special role or relationship among the parties in a case,[8] *Gritzner* did not hold that the parents in that case also have a duty to warn every child that the parents encounter for the indefinite future about the perpetrator's propensity for sexual abuse.

¶ 41. *Schuster,* the other case relied upon by the plaintiffs, also does not describe negligent failure to warn claims as extending to circumstances such as those in the present case. In *Schuster,* this court recognized that a claim for relief was stated when the complaint set forth allegations of a psychiatrist's failure to warn a patient's family of the patient's dangerous condition. *Schuster,* 144 Wis. 2d at 226–29, 263. The discussion focused on the extent to which psychotherapists specifically have a duty to warn others about

---

[8] *See Hoida, Inc., v. M&I Midstate Bank,* 2006 WI 69, ¶¶ 32, 34, 291 Wis. 2d 283, 717 N.W.2d 17.

317

dangerous patients in contexts when the information about the danger they have is so certain and specific that it supports initiation of detention or commitment proceedings. *See id.* at 257–62.

¶ 42. The plaintiffs here claim a much broader type of failure to warn breach. Unlike the breach claim in *Schuster* which emanated from knowledge of such a certain and specific danger, the plaintiffs in this case do not allege that when the Archdiocese of Louisville hired Kazmarek, the Diocese had knowledge of such a specific and immediate danger as that described in *Schuster.*

¶ 43. Although we agree with the Diocese that *Gritzner* and *Schuster* do not make the plaintiffs' case, we disagree with the Diocese that *MacKenzie* is directly applicable to this case in the way the Diocese claims. *MacKenzie,* unlike the present case, addresses an employer's obligation to disclose certain information to an *employee* in the context of an intentional misrepresentation claim. *MacKenzie,* 234 Wis. 2d 1. In contrast, this case involves a failure to warn third parties, in the context of a negligence claim. Nevertheless, we agree that because this case involves questions about an employer's breach, it warrants taking a closer look at any special roles and, consequently, obligations, created by the former employment relationship between the Diocese and Kazmarek. *See Hoida,* 291 Wis. 2d 283, ¶ 32.

¶ 44. On the one hand, the plaintiffs in this case had virtually no relationship with the Diocese. There are significant gaps temporally and geographically, with the plaintiffs separated from the Diocese by several state lines and their abuse separated from Kazmarek's employment with the Diocese by a number of years, and the complaint never indicated that their paths crossed

at all prior to the plaintiffs filing this action. Thus, the relationship between the parties in this case is quite attenuated.

¶ 45. There is no state in which employers are recognized as being negligent for failing to seek out, find, and warn future employers of sexually dangerous former employees. Even those states that have recognized a negligent referral doctrine do not impose liability when a referral letter is sent by a past employer to a future employer of such an employee unless actual misrepresentations are made in such a letter. *See Randi W.*, 929 P.2d at 584.

¶ 46. Thus, we conclude that the plaintiffs' complaint fails to allege negligence (duty of care and breach thereof) sufficiently to survive a motion to dismiss. Although the plaintiffs allege that the Diocese knew that Kazmarek had a propensity for sexual abuse, what is more pertinent is what the plaintiffs did not allege. They did not allege that the Diocese knew that Kazmarek was in Kentucky, still teaching children, or working for the Archdiocese in Louisville. They did not allege any knowledge that the children at the Mother of Sorrow School in Louisville were in any danger. They did not allege that the Archdiocese of Louisville asked the Diocese for a reference, that the Diocese made a reference recommending Kazmarek, or that the Diocese had any communication whatsoever with the Archdiocese of Louisville regarding Kazmarek.

¶ 47. The plaintiffs also fail to provide legal authority supporting their arguments. They argue that the duty of ordinary care in this case encompasses a specific obligation to warn all parochial schools and dioceses in this country, as well as future parents of

unforeseeable victims, but have cited no cases in which the failure to warn third parties has been described in such sweeping terms.

¶ 48. Consequently, the plaintiffs have not stated a claim for negligence. They have not alleged that the defendant fell below the standard of care under the circumstances. We decline to rule that under the general duty of ordinary care recognized in Wisconsin, an employer may be found negligent for failing to warn unforeseen third parties of a dangerous former employee. Such a ruling would extend an employer's obligation to warn indefinitely into the future to a sweeping category of persons, thereby requiring employers to warn nearly all potential future employers or victims, as the plaintiffs in this case argue.

B

¶ 49. We next address the public policy concerns generated by this case. In Wisconsin, we recognize six public policy grounds upon which this court may deny liability even in the face of proven or assumed negligence:

> (1) "the injury is too remote from the negligence"; (2) the recovery is " 'wholly out of proportion to the culpability of the negligent tort-feasor' "; (3) the harm caused is highly extraordinary given the negligent act; (4) recovery "would place too unreasonable a burden" on the negligent tort-feasor; (5) recovery would be "too likely to open the way to fraudulent claims"; and (6) recovery would enter into " 'a field that has no sensible or just stopping point.' "

*Hoida,* 291 Wis. 2d 283, ¶ 41. This court may refuse to impose liability on the basis of any of these factors

320

without full resolution of a cause of action by trial. *Stephenson v. Universal Metrics, Inc.,* 2002 WI 30, ¶¶ 42–43, 251 Wis. 2d 171, 641 N.W.2d 158.

¶ 50. In *Nichols,* we stated that in *Rockweit,* 197 Wis. 2d at 425,

> [w]e held that " 'once it is determined that a negligent act has been committed and that the act is a substantial factor in causing the harm, the question of duty is irrelevant and a finding of nonliability can be made only in terms of public policy.' " *Id.* (citations omitted). A finding of nonliability on the basis of "public policy is a question of law which the court alone decides." *Id.* (citations omitted). Our decision "to deny liability is essentially one of public policy rather than of duty or causation." *Id.* (citation omitted). We stated that this approach represents the minority viewpoint of *Palsgraf v. Long Island R.R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928) (Andrews, J., dissenting), that we adopted in *Pfeifer v. Standard Gateway Theater,* 262 Wis. 229, 55 N.W.2d 29 (1952), and *Klassa v. Milwaukee Gas Light Co.,* 273 Wis. 176, 77 N.W.2d 397 (1956). We declined to adopt the "no-duty, no-liability concept of the majority in *Palsgraf.*" *Rockweit,* 197 Wis. 2d at 420, 541 N.W.2d 742.

*Nichols,* 308 Wis. 2d 17, ¶ 41. We also stated, "liability in negligence cases in Wisconsin more often has been limited by consideration of public policy factors" rather than by emphasizing "duty and foreseeability as a way of limiting liability in a negligence case." *Id.,* ¶ 36. We explained in *Nichols* that

> *Gritzner* and *Rockweit* are still good law in Wisconsin. Nothing in *Hoida* was intended to overrule or change the principles of law expressed in *Gritzner* and *Rockweit.* While liability has been limited in a negligence case based on the absence of a duty, liability in the vast majority of negligence cases in Wisconsin is guided,

when determining whether to limit liability, by consideration of public policy factors, as *Gritzner* [lead opinion] and *Rockweit* demonstrate.

*Id.*, ¶ 47.

¶ 51. As a matter of best practice, we will refrain from a public policy consideration of liability until after a trial of the facts, but we may make a public policy determination without first remanding for an analysis of the negligence claim where the facts presented are simple to ascertain and the public policy questions have been fully presented. *See Alvarado,* 262 Wis. 2d 74, ¶ 18; *Miller,* 219 Wis. 2d at 265.

¶ 52. We conclude in this case that the public policy issues are fully presented by the complaint and motions to dismiss. There are no remaining factual questions that would substantively alter our public policy analysis.

¶ 53. The factor of greatest concern here is the final public policy ground recognized under Wisconsin law, namely, whether allowing "recovery would enter into 'a field that has no sensible or just stopping point.'" *Hoida,* 291 Wis. 2d 283, ¶ 41 (citations omitted). The Diocese warns of a slippery slope that a decision allowing the claims against the Diocese to proceed would create, in essence requiring employers to warn all prospective employers about any bad acts of ex-employees.

¶ 54. Even assuming the complaint in this case stated a claim for negligence, the plaintiffs' claims would nonetheless be precluded because allowing recovery would be the beginning of a descent down a slippery slope with no sensible or just stopping point. A decision

322

to the contrary would create precedent suggesting that employers have an obligation to search out and disclose to all potential subsequent employers, which could include in an employment context every school in the country or beyond, all matters concerning an ex-employee's history. In *Gritzner,* this court contrasted its decision to remand the case for further fact-finding with a decision in another case to deny liability on public policy grounds, *Kelli T-G v. Charland,* 198 Wis. 2d 123, 542 N.W.2d 175 (Ct. App. 1995).[9] The difference, a majority of this court explained in *Gritzner,* is that in *Kelli T-G,* there was not the same kind of special relationship as there was between the defendant in *Gritzner* and the children who had been entrusted into his care. *Gritzner,* 235 Wis. 2d 781, ¶ 77 n.2, 86 (Abrahamson, C.J., concurring).[10]

---

[9] In *Gritzner,* this court also emphasized that the reason for remanding for fact-finding rather than deciding that case on public policy grounds was because we knew

> very little of the circumstances and facts of this case. We do not know, for example, about Michael's prior "inappropriate sexual acts" with female children, or how many victims were involved. We do not know whether Michael was adjudged a delinquent. We do not know whether Michael's previous inappropriate sexual act or acts were the subject of any juvenile court proceedings.

*Gritzner,* 235 Wis. 2d 781, ¶ 81 (Abrahamson, C.J., concurring)(citations omitted). Such is not the case here.

[10] We clarify here that the following passage from a 2004 court of appeals decision is an incorrect reading of both *Kelli T-G* and of *Gritzner:*

> *Kelli T-G. v. Charland,* 198 Wis. 2d 123, 129, 542 N.W.2d 175 (Ct. App. 1995), appeared to establish a bright-line rule that, as a matter of public policy, there can never be a common law duty to warn third persons of potential dangers in the absence of a special relationship. In *Gritzner v. Michael R.,* 2000 WI 68, 235 Wis. 2d 781, 611 N.W.2d 906, both the supreme court majority and the

¶ 55. This case is more akin to *Kelli T-G* than to *Gritzner*. *Kelli T-G* was a case involving negligence claims brought by the guardian ad litem of a child who had been sexually abused and the child's mother. *Kelli T-G*, 198 Wis. 2d at 125–26. The mother argued that the one of the defendants, who was formerly married to the perpetrator at the time, had failed to warn the mother that her ex-husband was a pedophile who posed a danger to the child. *Id.* In that case, the defendant testified in deposition that even though she was concerned at the time and felt that she had an obligation to warn the child's mother about her ex-husband's pedophile offenses, she did not follow up with the mother after initially giving the mother her phone number. *See id.* at 127–28.

¶ 56. The court of appeals concluded in that case that liability was precluded by the judicially recognized public policy ground that "allowance of recovery would enter a field that has no sensible or just stopping point." *Id.* at 130 (citation omitted). Specifying its concerns in

minority rejected this bright-line rule in favor of a case-by-case approach. Thus, to the extent that *Kelli T-G* announced a bright-line rule, *Gritzner* sub silentio has overruled *Kelli T-G*.

*Estate of Paswaters v. Am. Family Mut. Ins. Co.,* 2004 WI App 233, ¶ 18 n.2, 277 Wis. 2d 549, 692 N.W.2d 299. The above passage is incorrect because *Kelli T-G* articulated no such bright-line rule. Quite to the contrary, the court in *Kelli T-G* explicitly explained:

The parties offer excellent arguments over whether Wisconsin law imposes a common law duty to warn third persons of potential dangers in the absence of a special relationship. . . . We conclude, however, that *we need not confront the common law duty/special relationship questions* because the issue in this case is clearly resolved on public policy grounds.

*Kelli T-G,* 198 Wis. 2d at 129 (emphasis added).

that case, the court explained that the plaintiffs' failure to warn arguments left unresolved such questions as whether an obligation to warn depended on specific types of knowledge about a person's proclivity to pedophilia, how the obligation would vary if the defendant were a mental health or criminal justice professional, whether an obligation to warn exists regardless of whether a believed pedophile had been charged but never criminally convicted, whether a person could be liable for issuing a warning about someone who was not actually a pedophile, and to whom warnings must be given beyond the parties. *Id.* at 130–32.

¶ 57. Such questions remain unanswered in this case as well. It appears that the plaintiffs here would require that every individual with knowledge about a former employee potentially posing a danger to unforeseen future victims must warn thousands of individuals and organizations across the country, from dioceses to parochial school systems to even a broad and undefined category of parents of unforeseen future victims. The plaintiffs offer no parameters or guidance about how to make such a warning requirement feasible. Feasibility notwithstanding, there are other serious policy concerns which we share with the *Kelli T-G* court. The court of appeals in *Kelli T-G* explained:

> Tragically, sexual abuse has brought devastating consequences to countless children and their families. Sadly, our society has discovered that many pedophiles elude the control of the criminal justice system. Many seem unchanged despite psychotherapeutic intervention and the rehabilitation efforts of corrections, probation, and parole. As pedophiles sexually abuse children again and again, some state legislatures, in a desperate effort to locate new methods to stop the assaults, debate whether to enact "neighborhood notification" laws to warn citizens of paroled child molest-

325

ers living in their communities. Thus, legislatures debate the appropriate scope of *government's* duty to warn and they struggle to define sensible starting and stopping points. For government, the struggle is extremely difficult as a matter of public policy. For an individual citizen, the struggle is extremely difficult as a matter of morality, and virtually impossible as a matter of law.

*Kelli T-G*, 198 Wis. 2d at 131–32 (emphasis in original). We agree.

¶ 58. We emphasize that this court finds abhorrent any type of facilitation of sexual abuse by third parties. It is critical that sexual abuse victims receive full justice through our criminal and civil laws to the extent legally possible. In this case, the plaintiffs are not being denied compensation for their alleged injuries at the hands of Kazmarek. To the contrary, the record in this case contains undisputed information that prior to filing this lawsuit, the plaintiffs had already received compensation for a settlement received in a lawsuit directly against Kazmarek and the Louisville Archdiocese.

¶ 59. Furthermore, unlike the allegation against the Milwaukee Archdiocese, there was no similar allegation that the Madison Diocese made affirmative statements to parents in Wisconsin about steps it would take to try to prevent future abuse by Kazmarek. Without concluding one way or another what effect the statements made by the Milwaukee Archdiocese would make on our determination of their liability,[11] we conclude that as to the Diocese, the plaintiffs ask us to

[11] This court is equally divided on whether to affirm or reverse the decision of the court of appeals dismissing the plaintiffs' complaint against the Archdiocese of Milwaukee. Consequently, we affirm the court of appeals' decision to affirm

grant liability on the basis of nothing more than a breach of duty created by the Diocese's knowledge of Kazmarek's propensity for sexual abuse combined with the Diocese's failure to warn a broad group of potential future employers of Kazmarek and parents of unforeseen victims about Kazmarek.

¶ 60. The primary public policy problem with recognizing the claim as presented by the plaintiffs is that there is no sensible stopping point to recognizing negligence claims for such an open-ended and ill-defined sweeping claim. Recognizing the plaintiffs' claim against the Diocese in this case could result in requiring all employers to warn all unforeseen potential future employers of any number of problems related to any number of past employees. It could further result in all parents who become aware that their child was sexually abused then facing potential liability for not warning every other parent who might also have children at risk of being in contact with the perpetrator.

¶ 61. At the close of oral arguments in this case, plaintiffs' counsel on rebuttal was asked to respond to the possibility that even if the Louisville Archdiocese had in fact been warned, the plaintiffs' abuse might not have been prevented. Plaintiffs' counsel responded, "well in that case, then we would have an additional tortfeasor on that theory." And therein lies the crux of the slippery slope problem. The plaintiffs appear to interpret Wisconsin's duty of ordinary care as creating automatic negligence and liability for any person even tangentially connected in a causal chain of injury, with little concern about the relationship among those sued, or how many years have passed between causal events.

the circuit court's dismissal of the plaintiffs' claims against the Archdiocese of Milwaukee, without further analysis of that issue.

¶ 62. There must be limits. We draw one here.

IV

¶ 63. This court is equally divided on whether to affirm or reverse the decision of the court of appeals dismissing the plaintiffs' complaint against the Archdiocese of Milwaukee. Consequently, we affirm the court of appeals' decision to affirm the circuit court's dismissal of the plaintiffs' claims against the Archdiocese of Milwaukee, without further analysis of that issue.

¶ 64. We further conclude that the plaintiffs have not alleged an actionable claim for negligence against the Diocese of Madison under which relief could be granted under Wisconsin negligence law. The type of failure to warn claim recognized under Wisconsin law does not extend as far as the plaintiffs argue. We finally conclude that even if a viable negligence claim had been made, recovery against the Diocese would be precluded on the public policy ground that allowing recovery would send this court down a slippery slope with no sensible or just stopping point. We therefore affirm the decision of the court of appeals, on different grounds.

*By the Court.*—The decision of the court of appeals is affirmed.

¶ 65. DAVID T. PROSSER, J., did not participate.