NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11533

ROBERT ROE No. 1 & others[1] vs.  CHILDREN'S HOSPITAL MEDICAL
CENTER & others.[2]


Suffolk.     April 8, 2014. - October 1, 2014.

Present:  Spina, Cordy, Botsford, Gants, Duffly, & Lenk, JJ.


Child Abuse.  Negligence, Hospital, Employer, Duty to prevent
    harm.  Practice, Civil, Complaint, Amendment of complaint,
    Dismissal.


Civil action commenced in the Superior Court Department on
March 28, 2011.

A motion to dismiss was heard by Merita A. Hopkins, J.

The Supreme Judicial Court granted an application for
direct appellate review.


Mark F. Itzkowitz (Carmen L. Durso with him) for the
plaintiffs.
Gail M. Ryan (John P. Ryan with her) for Children's
Hospital Medical Center.
The following submitted briefs for amici curiae:
John J. Barter for Professional Liability Foundation, Ltd.

---

[1] Robert Roe Nos. 2-11.

[2] Michael Moe Nos. 1-10.

Darrell L. Heckman, of Ohio, & Ninamary Buba Maginnis, of Kentucky, for National Center for Victims of Crime.

J. Michael Conley, Jeffrey S. Beeler, Thomas R. Murphy, & Kimberly A. Alley for Massachusetts Academy of Trial Attorneys.

CORDY, J.  This case requires us to decide whether a Massachusetts hospital employer owes a legally cognizable duty of care to future patients of a doctor who has left the hospital's employ and resumed practicing medicine in the employ of a different hospital in another State.  We conclude that such a duty is not cognizable in the circumstances presented here, where the hospital does not have the type of special relationship either with its former employee, or with any of his prospective patients, that would create such a duty.  Consequently, we affirm the judgment entered in the Superior Court dismissing the complaint for failing to state a claim on which relief may be granted.

1.  Background.  We recite the relevant facts as drawn from the plaintiffs' complaint, which we assume to be true for the purposes of our review.  Nader v. Citron, 372 Mass. 96, 98 (1977).

The defendant, Children's Hospital Medical Center (Children's Hospital), is a fully licensed hospital located in Boston.  In 1966 it hired Melvin Levine as a pediatric physician.  Levine held that position until leaving Children's

Hospital's employ in 1985.[3]  On leaving Children's Hospital,
Levine relocated to North Carolina, where he obtained a license
to practice medicine and became employed as a pediatrician at
the University of North Carolina School of Medicine (UNC).
Twenty-four years later, in 2009, amid allegations that he had
performed medically unnecessary genital examinations on a number
of his patients at UNC, Levine signed a consent order
surrendering his license to practice medicine in North Carolina
and agreeing not to practice medicine in any other jurisdiction.

In 2011, the plaintiffs, eleven former patients of Levine
at UNC, brought this suit against Children's Hospital in the
Superior Court.  Essentially, they allege that Children's
Hospital failed to properly train, supervise, or discipline
Levine during his employment at Children's Hospital; knew or
should have known that Levine was conducting inappropriate
genital examinations of minors during that employment; and
failed to report Levine's conduct to various licensing
authorities and UNC.  Further, they allege that, as a
consequence of this negligence on the part of Children's

---

[3] The reasons for the departure of Melvin Levine from
Children's Hospital and Medical Center (Children's Hospital) are
not in the record, and the plaintiffs have not alleged that
Levine's departure was the product of complaints against him or
that it was anything other than voluntary.

Hospital, Levine was able to continue his abuse of patients, including the plaintiffs, during his employment at UNC.[4]

More specifically, the plaintiffs allege that, in 1967, the mother of a minor male patient informed Children's Hospital that Levine had sexually abused her son during an examination,[5] and that the plaintiffs are "informed and believe" that other patients may have made similar complaints to Children's Hospital during the term of Levine's employment. Further to this allegation, the complaint identifies litigation initiated in Massachusetts by former patients treated by Levine when he worked at Children's Hospital -- litigation brought after Levine left Children's Hospital's employ. For example, in 1988, a patient identified as John Doe No. 6 filed suit against Levine in the United States District Court for the District of Massachusetts, alleging that Levine repeatedly performed medically unnecessary examinations of his genitals between 1978 and 1984; and, in 1993, a former patient identified as John Doe

---

[4] The plaintiffs' complaint alleges the following legal theories: count I alleges that Children's Hospital was negligent in failing to take any action to prevent Levine from abusing them; count II alleges a conspiracy between Children's Hospital and unknown individuals to conceal and prevent the disclosure of Levine's sexual abuse of his patients; and count III alleges that Children's Hospital intentionally and fraudulently concealed and prevented the disclosure of Levine's sexual abuse of his pediatric patients.

[5] Children's Hospital denies that any such report was filed, but for the purposes of our review we take the factual allegations set forth in the complaint as true.

No. 7 complained of similar abuse to the Board of Registration in Medicine (board).[6]  The complaint also references four additional suits that were filed in the Superior Court in 2005, 2006, 2008, and 2011, alleging substantially the same type of conduct by Levine during his employment at Children's Hospital.

In July, 2011, Children's Hospital moved to dismiss the plaintiffs' complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), for failure to state a claim.  Children's Hospital argued, among other things, that it did not owe any cognizable duty of care to the plaintiffs, as the alleged abuse happened after Levine left its employ and during his work for an unrelated hospital in another State.  In response, the plaintiffs moved to amend their complaint in August, 2011, to add a paragraph alleging that Children's Hospital owed them a duty of care because it had a "special relationship" with Levine, and it knew or should have known that he posed a foreseeable risk of harm to future patients.  Children's Hospital opposed the motion, arguing that the proposed amended complaint would still not state a claim on which relief could be granted.

---

[6] Children's Hospital was not a party to the Federal lawsuit brought by John Doe No. 6, and after a jury trial, a directed verdict was entered in favor of Levine, resulting in the suit's dismissal.  According to Children's Hospital, the complaint filed by John Doe No. 7 with the Board of Registration in Medicine (board) was dismissed after an investigation had been completed by board investigators.

In July, 2012, a Superior Court judge, in a detailed memorandum of decision and order, allowed Children's Hospital's motion to dismiss and denied the plaintiffs' motion to amend. She concluded that Children's Hospital did not owe a recognized duty of care to the plaintiffs -- victims of abuse at a hospital in North Carolina -- given that the alleged abuse occurred after Levine left Children's Hospital's employ. The judge added that public policy did not dictate the creation of a duty to the plaintiffs that would expose an employer to liability for future potential abuse on unknown persons by a former employee anywhere in the country. As a result, she denied the motion for leave to amend, as the proposed amendment would not "cure the defect in the original complaint: the lack of a cognizable legal duty to these particular plaintiffs." The plaintiffs timely appealed the judge's decision, and we granted their application for direct appellate review.

2. Discussion. The only issue on appeal is whether Children's Hospital owed a duty of reasonable care to the plaintiffs requiring it to take affirmative action to protect them from Levine, including informing UNC or other appropriate authorities of allegations of sexual abuse made against him. Our review of the judge's decision to dismiss the claim pursuant to Mass. R. Civ. P. 12 (b) (6) is de novo. Dartmouth v. Greater New Bedford Regional Vocational Tech. High Sch. Dist., 461 Mass.

366, 373 (2012).  On review, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . .  Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554-555 (2007).

"To recover for negligence, a plaintiff must show 'the existence of an act or omission in violation of a . . . duty owed to the plaintiff[s] by the defendant." Cottam v. CVS Pharmacy, 436 Mass. 316, 320 (2002), quoting Dinsky v. Framingham, 386 Mass. 801, 804 (1982).  "Whether a defendant owes a plaintiff a duty of reasonable care is a question of law that is decided 'by reference to existing social values and customs and appropriate social policy.'" Coombes v. Florio, 450 Mass. 182, 187 (2007), quoting Cremins v. Clancy, 415 Mass. 289, 292 (1993).  "If no such duty exists, a claim of negligence cannot be brought." Remy v. MacDonald, 440 Mass. 675, 677 (2004).

As a general rule, all persons have a duty to exercise reasonable care in their own conduct to avoid harming others where the risk of harm is foreseeable to the actor.  Id.  That

duty does not typically extend to controlling the conduct of a third party -- here, Levine -- unless a "special relationship" exists between the party posing a risk to others and the party who can prevent that harm from occurring by taking action.  Lev v. Beverly Enters.-Mass., Inc., 457 Mass. 234, 242 (2010).

We have recognized the relationship between an employer and employee as a type of special relationship "that potentially would give rise to a duty of care [to third parties] . . . when 'the employment facilitates the employee's causing harm'" to them (citation omitted).  Lev, 457 Mass. at 243-244.  See Restatement (Third) of Torts:  Liability for Physical and Emotional Harm § 41 (2012) ("Duty to Third Parties Based on Special Relationship with Person Posing Risks").[7]  In such circumstances, employers are responsible for exercising reasonable care to ensure that their employees do not cause

---

[7] The Restatement identifies four types of special relationships giving rise to a duty of reasonable care with regard to risks posed by a third party that arise within the scope of the relationship:  "(1) a parent with dependent children; (2) a custodian with those in custody; (3) an employer with employees when the employment facilitates the employee's causing harm to third parties; and (4) a mental-health professional with patients."  Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 41(a) (2012).

"Employment facilitates harm to others when the employment provides the employee access to physical locations, such as the place of employment, or to instrumentalities, such as a concealed weapon that a police officer is required to carry while off duty, or other means by which to cause harm that would otherwise not be available to the employee."  Id. at § 41 comment e.

foreseeable harm to a foreseeable class of plaintiffs.  For example, an employer whose employees have contact with members of the public in the course of conducting the employer's business has a duty to exercise reasonable care in selecting and supervising its employees.  See Coughlin v. Titus & Bean Graphics, Inc., 54 Mass. App. Ct. 633, 639 (2002).

While there is little doubt that Children's Hospital had a duty to supervise and monitor Levine's conduct while he was employed as a physician there, and owed a duty of reasonable care to his minor patients to prevent foreseeable harm to them, that is not this case.  We have never recognized or imposed a duty on an employer to prevent the future behavior of a former employee, with respect to unknown customers and clients of unknown future employers.  While the responsibilities of medical providers to vulnerable patients might extend beyond those of other service-providing employers, the geographic and temporal breadth of the duty the plaintiffs seek to impose reaches too far, and would potentially expose the employer to liability to an essentially limitless class of unknown parties for acts committed long after the employer had any ability to supervise, monitor, or discipline the former employee's conduct.  We decline to create such uncertainties for medical providers in

the Commonwealth by creating such a duty, and are not aware of any other jurisdiction that has done so.[8]

In similar circumstances, the Supreme Court of Wisconsin declined to find a special relationship giving rise to a duty of care in Hornback v. Archdiocese of Milwaukee, 313 Wis. 2d 294 (2008). In that case, the plaintiffs, who grew up in Kentucky, alleged that their former teacher sexually abused children between 1964 and 1966 while employed by various schools in Wisconsin that were operated by the Diocese of Madison (diocese). Id. at 302. The teacher then accepted a position in another State, Kentucky, where he allegedly abused the plaintiff students. Id. The plaintiffs brought suit against the diocese, claiming that it knew or should have known of the teacher's conduct and was negligent in failing to affirmatively warn other schools or authorities of the teacher's history of sexual abuse. Id. at 302-303. The court affirmed the dismissal of the

---

[8] Even when we impose new duties based on relationships, we are careful not to recognize duties that would expose the person having the relationship to endless liability and litigation from innumerable people for failing to act in ways that arguably might have prevented some future harm. Compare Jupin v. Kask, 447 Mass. 141, 152 (2006) (recognition of duty of property owner to secure gun from person known to have history of violence and mental instability would not expose property owners to endless litigation and liability), with Remy v. MacDonald, 440 Mass. 675, 677-678 (2004) (imposing liability on pregnant woman not to harm fetus negligently would present unlimited number of circumstances where liability could attach).

complaint,[9] id. at 328, concluding that the diocese did not owe the plaintiffs a duty of care, reasoning that "[t]here is no state in which employers are recognized as being negligent for failing to seek out, find, and warn future employers of sexually dangerous former employees."  Id. at 319.  The court went on to state that the "plaintiffs appear to interpret Wisconsin's duty of ordinary care as creating automatic negligence and liability for any person even tangentially connected in a causal chain of injury, with little concern about the relationship among those sued, or how many years have passed between causal events. . . . There must be limits.  We draw one here."  Id. at 327-328.

The plaintiffs here have not alleged that Children's Hospital affirmatively misrepresented Levine's employment history in response to reference or professional qualification inquiries from UNC or any other authority, or that any such inquiries were even made.[10]  Rather, the duty the plaintiffs seek

---

[9] There were two defendants in the case, the Archdiocese of Milwaukee (archdiocese) and the Diocese of Madison (diocese). The trial court dismissed the complaint against both defendants on statute of limitations grounds, a decision that the Appeals Court of Wisconsin affirmed.  See Hornback v. Archdiocese of Milwaukee, 313 Wis. 2d 294, 304 (2008).  The Supreme Court of Wisconsin also affirmed the dismissal against the diocese, but on duty of care grounds.  Id. at 319.  An equally divided Supreme Court affirmed the dismissal of the case against the archdiocese on statute of limitations grounds.  Id. at 328.

[10] We leave open the question what, if any, duty Children's Hospital might have with respect to inquiries made of it by

to impose is one that would obligate Children's Hospital to seek out Levine's future employers in order to warn them of past allegations of abuse made against him.  It is unclear what level of knowledge on the part of an employer would trigger such an obligation.  For example, if Children's Hospital received a complaint about Levine (or any other doctor), investigated that complaint, and determined it to be unsupported, would it still be obliged to seek out potential future employers and disclose the complaint to them in order to avoid liability?  Such a duty would place an onerous burden on employers, obligating them to track former employees and warn their future employers or, perhaps, even the customers of such future employers.  While the protection of children from sexual abuse is of great importance, an employer's duty to prevent such harm cannot extend to a duty to prevent the actions of a former employee later employed by an unrelated entity in another State in the decades following his departure from the employer's employ.

We have also recognized, on occasion, a "special relationship" between a defendant and prospective plaintiffs. See McGuiggan v. New England Tel. & Tel. Co., 398 Mass. 152, 162 (1986) (social host has duty to potential class of victims to stop serving individual he reasonably should know is

---

prospective employers in the medical field with regard to abuse allegations arising out of the work of former employees.

intoxicated); <u>Adamian</u> v. <u>Three Sons, Inc</u>., 353 Mass. 498, 501 (1968) (tavern owner has same duty).  See also <u>Mullins</u> v. <u>Pine Manor College</u>, 389 Mass. 47, 51 (1983) (college owed duty of care to students who were victims of rape where community of colleges had taken "steps to provide an adequate level of security on . . . campus").[11]  We have generally recognized such relationships only where the defendant could reasonably anticipate that his or her failure to take prompt action in circumstances that he or she controlled could result in harm to a clearly defined class of plaintiffs; for example, a tavern owner can reasonably be aware that his or her failure to stop serving an intoxicated person can lead to a predictable injury to other drivers on the neighboring roads.

We decline to recognize a special relationship between Children's Hospital and the plaintiffs.  The potential class of plaintiffs who could claim a special relationship with Children's Hospital includes every potential patient in any State where Levine ever worked after he left its employ --

---

[11] As Children's Hospital points out, in <u>Coombes</u> v. <u>Florio</u>, 450 Mass. 182, 190 (2007), we recognized a special relationship between doctor and patient giving rise to liability.  In that case, the patient injured the plaintiffs after his doctor neglected to exercise a duty to inform the patient about the side effects of prescribed medication.  <u>Id</u>. at 184-185, 190. While both <u>Coombes</u> and this case involve medical personnel, <u>Coombes</u> is inapposite given that the proposed relationship here arose from conduct occurring between an employer and its employee, not a doctor and his or her patient.

essentially, an unlimited and unknowable number of people. The plaintiffs had virtually no relationship with or connection to Children's Hospital. There are significant gaps both temporally and geographically between Levine's employment at Children's Hospital and the alleged abuse at UNC. See Hornback, 313 Wis. 2d at 318-319. Indeed, the only connection between the plaintiffs and Children's Hospital is that their alleged abuser worked for Children's Hospital twenty-four years before their abuse was reported. This is simply insufficient to support the existence of a special relationship between the parties giving rise to a duty of care.

In support of their argument that Children's Hospital owed them a duty of care, the plaintiffs also argue that (1) the medical community has imposed a duty on itself to report alleged abuse in order to protect future patients from predatory physicians; (2) the general public has demonstrated, through the enactment of statutes and regulations, that such a duty exists, establishing a "community consensus"; and (3) public policy is served by the recognition of such a duty. While we agree that there is a well-established community consensus in favor of protecting children from abuse, we disagree that such concerns create a duty under the circumstances presented in this case, but address the plaintiffs' points in turn.

     First, a community may impose a duty of care on itself. See Mullins, 389 Mass. at 51.  The plaintiffs contend that the medical community has imposed on itself the duty to protect children from being abused.  As evidence, they point to the creation of the Federation of State Medical Boards (FSMB) and the National Board of Medical Examiners (NBME),[12] which are organizations whose services are used by medical facilities to determine the fitness of applicants for licensure.  They also point to the 1958 version of the American Medical Association's "Principles of Medical Ethics," which called on physicians to "safeguard the public" against immoral physicians and "expose, without hesitation, illegal or unethical conduct of fellow members of the profession."  Finally, they draw our attention to a policy statement of the American Academy of Pediatrics (AAP), which recommends that medical facilities search State registries and contact former employers to determine whether an employee has a history of child abuse.  American Academy of Pediatrics, Policy Statement -- Protecting Children from Sexual Abuse by Health Care Providers, 128 Pediatrics 407, 411-412 (2011).

---

     [12] According to the trial judge's memorandum of decision, the Federation of State Medical Boards represents seventy medical boards in the United States and maintains a database of information regarding the licensing and discipline of physicians to be used by the public.  While it collects information from its member medical boards, it is unclear whether it solicits direct reports from medical institutions.

While we agree that the medical community has taken steps to protect children from sexual abuse, we are not persuaded that medical care facilities have undertaken a duty to protect unknowable future plaintiffs from harm by former employees.  The FSMB and NBME are licensing databases, and exist to allow medical institutions and licensing boards to research the histories of applicants.  Medical facilities are not required to report alleged abuse to them, and there is no penalty for a failure to do so.  The mere existence of the boards does not create a duty of care on Children's Hospital's part to the plaintiffs.

Similarly, the AAP's statement merely encourages hospitals to inquire whether a potential hire presents a risk of child abuse.  It does not create a legal duty of care.  Lev, 457 Mass. at 244-245 (employer's internal safety policy does not create legal duty where none already existed at law).  It also is not apparent that the statement even applies to these circumstances, as it does not include a duty to actively report alleged abuse.  While the AAP's statement may be evidence of a consensus with respect to proper hiring and retention practices, and could potentially be used to prove UNC's negligence if it failed to exercise its due diligence in investigating Levine's fitness as a pediatrician, it does not support the plaintiffs' claim that the medical community has imposed on itself a duty that would

require Children's Hospital to report the allegations made against Levine in the absence of an inquiry by a prospective employer.

The same is true of the plaintiffs' contention that the duty of care proposed has been incorporated into Massachusetts statutory law, evincing a consensus in the general public in support of the duty.  The plaintiffs refer us to G. L. c. 119, § 51A, which requires physicians -- among other professionals -- to notify the Department of Children and Families (department) when they have "reasonable cause to believe" that a child has been abused;[13] G. L. c. 111, § 53B, which requires hospitals to report disciplinary action taken against registered physicians to the board; and G. L. c. 112, § 5F, which requires health care providers to report to the board "any person who there is reasonable basis to believe" has engaged in the improper practice of medicine.[14]

---

[13] General Laws c. 119, § 51A (a), requires that "[a] mandated reporter who, in his professional capacity, has reasonable cause to believe that a child is suffering physical or emotional injury resulting from:  (i) abuse inflicted upon him which causes harm or substantial risk of harm to the child's health or welfare, including sexual abuse . . . shall immediately communicate with the department orally and, within 48 hours, shall file a written report with the department detailing the suspected abuse or neglect."

[14] The plaintiffs argue not that Children's Hospital violated these statutes, but that the statutes are indicative of the community consensus in favor of imposing their proposed duty of care.

As an initial matter, and as the judge correctly noted, the mere existence of a statute or regulation does not automatically give rise to a legal duty for the purpose of a negligence action. See Lev, 457 Mass. at 245. Rather, "[i]t is only where a duty of care exists that the violation of a statute, ordinance, regulation, or policy is relevant because it constitutes some evidence of a defendant's negligence." Id. Certainly, all of the referenced statutes are generally intended to protect children in Massachusetts from abuse, and any evidence that Children's Hospital violated those statutes regarding Levine's conduct might be relevant in a tort action by patients alleged to have been abused by Levine while in Children's Hospital's employ. That, however, is because Children's Hospital already has a legally cognizable duty to prevent harm to its own minor patients, not because the existence of the statutes created that duty.

In any event, the statutes referenced by the plaintiffs do not support a conclusion that the public has come to the consensus that Children's Hospital owes a duty of care to the plaintiffs. To be certain, they require that Children's Hospital report abuse to the department and the board in order to protect children in the care of Massachusetts hospitals and doctors. They do not, however, create a duty to protect potential future plaintiffs in other States, or require

Children's Hospital affirmatively to alert prospective employers that Levine had been accused of sexual abuse.  We thus conclude that the plaintiffs' complaint does not state a claim on which relief may be granted.[15]

3.  Conclusion.  We affirm the denial of the plaintiffs' motion to amend the complaint and the allowance of Children's Hospital's motion to dismiss the complaint.

So ordered.

---

[15] Because we conclude that the plaintiffs' complaint, even if amended as proposed, would not state a claim on which relief may be granted, we affirm the Superior Court's denial of the plaintiffs' motion to amend.  See Vakil v. Vakil, 450 Mass. 411, 417 (2008) (motion to amend should be granted unless there appears to be good reason for denying motion such as futility of proposed amendment).