Curran, Dennis J., J.
Alleging that Yarushka Rivera suffered a fatal seizure on October 29, 2009, because she did not receive her prescription for the anti-epilectic drug Topamax, the plaintiff Carmen Correa, the administratrix for Ms. Rivera’s estate, commenced this action for wrongful death, punitive damages, and conscious pain and suffering against Ms. Rivera’s treating neurologist, Andreas P. Schoeck, M.D., Dr. Schoeck’s employer, New England Neurological Associates, P.C., and Ms. Rivera’s pharmacy, Walgreen Eastern Co., Inc. Walgreen’s moved for summary judgment on all of the plaintiffs claims against it, and this court allowed that motion in a margin endorsement in June 2016, and in doing so, invited Walgreen’s to file a motion for the entry of a separate and final judgment.
This case is before the court on the plaintiffs motion under Mass.R.Civ.P. 54(b) “to revise or reconsider” the June 2016 Order or, alternatively, to enter separate and final judgment against Walgreen’s. For the following reasons, the plaintiffs motion is ALLOWED in part and DENIED in part.
I. BACKGROUND
The following facts, as set forth in the summary judgment record, are undisputed and, where disputed, viewed in the light most favorable to the plaintiff as the non-moving party. See, Foster v. Group Health, Inc., 444 Mass. 668, 672 (2005).
After suffering a seizure in May 2009, Ms. Rivera came under Dr. Schoeck’s care. Dr. Schoeck prescribed Topamax to treat her seizure disorder. On June 13,2009, Ms. Rivera filled her Topamax prescription at Walgreen’s Pharmacy in Lawrence, Massachusetts. Ms. Rivera filled another Topamax prescription at Walgreen’s on July 26, 2009. At that time, a Walgreen’s pharmacist informed Ms. Rivera that her insurer, MassHealth would not cover any subsequent prescriptions for Topamax without “prior authorization” from Dr. Schoeck, and that she should contact Dr. Schoeck to obtain this required documentation.
Ms. Rivera had a second seizure on September 2, 2009. On September 8, 2009, Walgreen’s informed her, the plaintiff, and Ms. Rivera’s stepfather, Julio Escobar, that MassHealth had denied coverage for Ms. Rivera’s Topamax prescription for lack of prior authorization. Therefore, Walgreen’s could not fill Ms. Rivera’s Topamax prescription at that time unless she paid for it. Ms. Rivera and her family attempted to fill her Topamax prescription at Walgreen’s on September 18, 2009, September 28, 2009, October 12, 2009, and October 13,2009. Mr. Escobar attempted to obtain the prior authorization by telephoning Dr. Schoeck’s office several times between July and October 2009.
Walgreen’s pharmacy computer system permitted the pharmacist to send a courtesy fax to the prescribing physician whenever MassHealth denied coverage for lack of prior authorization. Walgreen’s pharmacists were not required to send these faxes; Walgreen’s did not maintain a record of these faxes; and Walgreen’s did not monitor whether the prescribing physicians actually received the faxes. The plaintiff contends that Walgreen’s pharmacists told Ms. Rivera and her family that they would send Dr. Schoeck a fax and telephone his office about the required prior authorization.
Meanwhile, in June 2009, Ms. Rivera’s psychiatrist, Dr. Juan Alonzo diagnosed Rivera with bipolar disorder and depression. In July 2009, Dr. Alonzo prescribed Lamictal to Ms. Rivera, directing her to take twenty-five milligrams at bedtime, and to increase the dosage to fifty milligrams after two weeks. At some point, Ms. Rivera’s Lamictal dosage was increased to seventy-five milligrams, which Dr. Alonzo decreased to. fifty milligrams on October 14, 2009.
Ms. Rivera died after suffering a third seizure on October 29, 2009.
II. DISCUSSION
I. Motion for Reconsideration
Rule 54(b) of the Massachusetts Rules of Civil Procedure provides that “any order or other form of decision however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the *667 claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the. claims and the rights and liabilities of all the parties.” The plaintiff seeks relief pursuant to this provision, asking the court “to revise or reconsider” the June 2016 Order.
“[I]t is within the inherent authority of a trial judge to ‘reconsider decisions made on the road to final judgment.’ ” Herbert A. Sullivan, Inc. v. Utica Mut Ins. Co., 439 Mass. 387, 401 (2003) (citations omitted). Notwithstanding that this “power to reconsider a case, an issue, or a question of fact or law, once decided, remains vested in the court until a final judgment or decree is entered, a judge is not obligated to exercise such power.” Id. Reconsideration “calls upon the discretion of the motion judge.” Audubon Hill S. Condo. Ass’n v. Community Ass’n Underwriters of Am., Inc., 82 Mass.App.Ct. 461, 470 (2012). The “practical criteria” that “(d]ecisional case law has developed” on which applicants should base their requests for reconsideration include “ ‘changed circumstances’ such as (a) newly discovered evidence or information, or (b) a development of relevant law; or (2) a particular and demonstrable error in the original ruling or decision.” Id. (citations omitted). The plaintiff appears to rely on the last criterion, an error in the court’s decision, arguing that the court failed to consider the genuine issues of material facts concerning Walgreen’s duty of care to Ms. Rivera arising out of its voluntarily assuming a duty by assuring her that it would contact Dr. Schoeck, and out of its having specific knowledge of the increased danger posed to her without medication to treat her seizure disorder.
A. Regulatory Framework
‘The MassHealth agency is responsible for the administration and delivery of health-care services to low- and moderate-income individuals and couples.” 130 Code Mass. Regs. §515.002(A). “The MassHealth Drug List specifies the drugs that are payable under MassHealth and designates which drugs require prior authorization. Any drug that does not appear on the MassHealth Drug List requires prior authorization.” 130 Code Mass. Regs. §406.422(E); see 130 Code Mass. Regs. §406.412(A) (“The MassHealth Drug List specifies the drugs that are payable under MassHealth”). “Prescribers[1] must obtain prior authorization from the MassHealth agency for drugs identified by MassHealth ... If the limitations on covered drugs .. . would result in inadequate treatment for a diagnosed medical condition, the prescriber may submit a written request, including written documentation of medical necessity, to the MassHealth agency for prior authorization for an otherwise noncovered drug.” 130 Code Mass. Regs. 406.422(A) (emphasis added); see 130 Code Mass. Regs. §450.303 (“In certain instances, the MassHealth agency requires . .. prior authorization to provide medical services”). MassHealth may reimburse members for certain medical expenses, see 130 Code Mass. Regs. §515.015(A), but “(bjefore reimbursing a member for care or services that would have required prior authorization, MassHealth may require submission of medical evidence for consideration under the prior-authorization standards.” 130 Code Mass. Regs. §515.015(B)(2).
B. Duty of Care
“An essential element of every negligence claim is the existence of a legal duty, which is the determinative issue in this case” with respect to the plaintiffs wrongful death claim against Walgreen’s. Afarian v. Massachusetts Elec. Co., 449 Mass. 257, 261 (2007). “If no such duty exists, a claim of negligence cannot be brought.” Roe No. 1 v. Children’s Hosp. Med. Ctr., 469 Mass. 710, 715 (2014) (citation omitted). “The existence of a legal duty is a question of law appropriate for resolution by summary judgment.” Afarian, 449 Mass. at 261.
In moving for summary judgment, Walgreen’s focused .primarily on the duty element, arguing that, as a matter of law, it neither owed Ms. Rivera a duty to ensure that she received her Topamax prescription, nor voluntarily assumed a duty to notify Dr. Schoeck that MassHealth required prior authorization before it would cover the prescription. In her motion to revise the June 2016 Order, the plaintiff argues that Walgreen’s did voluntarily assume a duty of care to Ms. Rivera, and that Walgreen’s owed her a duty because it purportedly received a “warning” from MassHealth that provided it with “special knowledge.”
1. Voluntarily Assumed Duty
Walgreen’s informed Ms. Rivera, the plaintiff, and Mr. Escobar that MassHealth required “prior authorization” before it would cover Rivera’s Topamax prescription, and that they should inform Dr. Schoeck; in the meantime, they could pay for the Topamax prescription themselves. The plaintiff argues that Walgreen’s voluntarily assumed a duly of care through the following communications with Ms. Rivera, the plaintiff, and Mr. Escobar: Walgreen’s told Ms. Rivera and her family that it would send a fax to notify Dr, Schoeck of MassHealth’s prior authorization requirement; and, viewing the facts in the light most favorable to the plaintiff, the court presumes that certain Walgreen’s pharmacists informed Ms. Rivera and her family that the pharmacists themselves would also contact Dr. Schoeck’s office by telephone. The plaintiff contends that Walgreen’s can be held liable for negligently performing this duty of informing Dr. Schoeck about the prior authorization requirement.
“If a person voluntarily assumes a duly or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking.” Cottam v. CVS Pharm,, 436 Mass. 316, 323-24 (2002) (citation omitted). “Apharmacy, like any other person or entily, may voluntarily assume a duty that would not otherwise be imposed on it, and thus may voluntarily assume a duly to provide information, advice or warnings to its customers.” Id, at 322. A voluntarily assumed duly may arise where failure to *668 exercise care in performing the services gratuitously undertaken would “increase the risk of . . . harm” or harm would be “suffered because of the other’s reliance upon the undertaking.” Id. at 323 &n.2 (approving principles set forth in Restatement (Second) ofTorts §323 (1965)); see Restatement (Third) ofTorts: Liability for Physical & Emotional Harm §42 (2012) (similarly addressing voluntary assumption of duty).
Merely telling Ms. Rivera and her family that it would contact Dr. Schoeck does not create a legal duty because Walgreen’s pharmacists expressly instructed her and her family to contact Dr. Schoeck themselves, which they did, apparently to no avail. As a result, the plaintiff has not demonstrated that she will be able to prove at trial that Walgreen’s offer to contact Dr. Schoeck would reduce the risk of harm to Ms. Rivera. See, Cottam, 436 Mass, at 323 &n.2; see also Restatement (Third) ofTorts: Liability for Physical & Emotional Harm §42, cmt. d (2012) (“[Knowledge that the undertaking will reduce the risk of harm to another is necessaiy for the existence of [finding that a duty has arisen from] an undertaking . . .”). For this same reason, the plaintiff has also not demonstrated that she will be able to prove at trial that Ms. Rivera and her family reasonably relied on Walgreen’s statements that it would contact Dr. Schoeck. See, Cottam, 436 Mass. at 323 & n.2.[2]
Even if this court were to characterize Walgreen’s assurances to Ms. Rivera and her family that it would inform Dr. Schoeck of the prior authorization requirement as official company policy, the policy does not rise to the level of a legal duty. “In Massachusetts, ‘[a]n employee’s violation of his employer’s rules, intended to protect the safety of third persons, is evidence of the employee’s negligence, for which the employer may be held liable.’ ” Lev v. Beverly Enters.-Mass., Inc., 457 Mass. 234, 245 (2010) (citation omitted). This violation, however, “does not create a duty in a plaintiff where one does not exist independently." Id. “It is only where a duty of care exists that the violation of a . . . policy is relevant because it constitutes some evidence of a defendant’s negligence.” Id. As no independent legal duty exists, construing Walgreen’s assurances as company policy does not create a voluntarily assumed duty. See id.; see, e.g., Roe No. 1, 469 Mass. at 718-19 (holding that American Academy of Pediatrics policy “which recommends that medical facilities search State registries and contact former employers to determine whether an employee has a history of child abuse” “merely encourages hospitals to inquire whether a potential hire presents a risk of child abuse . . . [and] does not create a legal duty of care”).
“[R]eference to existing social values, customs, and considerations of policy" also militates against imposing this duty on Walgreen’s. See, Luoni v. Berube, 431 Mass. 729, 730 (2000). Recognizing this duty “would place an onerous burden on” pharmacies, obligating them to monitor or supervise the prescribing physicians, and, in essence, to share in the responsibility to provide MassHealth with the necessaiy prior authorizations. See, Roe No. 1, 469 Mass. at 716. Moreover, “[a]s a generafrule, all persons have a duly to exercise reasonable care in their own conduct to avoid harming others where the risk of harm is foreseeable to the actor.” Id. at 715. That notwithstanding, “the general rule under [Massachusetts] common law is that there is no duiy to control another person’s conduct to prevent that person from causing harm to a third parly.” Lev, 457 Mass. at 245-46. Under those circumstances, a duty only arises if the plaintiff “demon - strate[s] ... a special relationship at common law that required the defendant [ ] to provide him with care.” O’Meara v. New England Life Flight, Inc., 65 Mass.App.Ct. 543, 544 (2006). The Supreme Judicial Court has held that “a pharmacy clearly has a duly to fill prescriptions correctly,” Cottam, 436 Mass. at 320, but it has not recognized a “special relationship” that expands that duty, except where the pharmacist has “specific knowledge of an increased danger to a particular customer,” id. at 323, discussed below.
Accordingly, as a matter of law, Walgreen’s did not voluntarily assume a duiy to contact Dr. Schoeck in order to ensure Ms. Rivera received her Topamax, and the plaintiff is not entitled to a revision of the June 2016 Order on this basis.
2. Special Knowledge
The plaintiff also argues that Walgreen’s owed Ms. Rivera a duty because it had “specific knowledge of an increased danger to” her from not taking Topamax and from taking a “sub-therapeutic dosage” of Lamictal, which, in high doses, may apparently be used to treat epilepsy. Plaintiffs Motion for Reconsideration, at 13. This argument fails as well.
In Cottam the Supreme Judicial Court held “that, where the pharmacist has no specific knowledge of an increased danger to a particular customer, the pharmacist has no duiy to warn that customer of potential side effects.” 436 Mass. at 323. The Court acknowledged decisions from other jurisdictions where, for example, “courts have held that a pharmacy could be found negligent for filling a prescription for what the pharmacist knew to be a lethal dose, ... for failing to warn the customer when filling two prescriptions that adversely interact with one another,... and for failing to warn the customer of the drug’s adverse interaction with alcohol where the customer was known by the pharmacist to be an alcoholic . . ."Id. at 322-23 (internal citations omitted).[3]
Exhibit 26 of the summary judgment record contains a copy from a “POPS [ ] Application” that references Ms. Rivera’s Lamictal prescription that Walgreen’s filled on September 9, 2009. The phrase “4201—LOW DOSE EXCEPTION” appears under the Exception Code column within the claim window. (Capitalization in original.) The plaintiff reads this form as a warning from MassHealth to Walgreen’s that Ms. Rivera “was receiving a sub-therapeutic dosage of Lamictal for the treatment of epilepsy.” Plaintiffs Motion for Reconsideration, at 13.
*669 The conclusion that the plaintiff draws from Exhibit 26 “require[s] a speculative leap well beyond the length of a reasonable inference” that would be permissible to survive a summary judgment motion. See, Poon v. Massachusetts Inst. of Tech., 74 Mass.App.Ct. 184, 199 (2009). Such a warning does not appear anywhere on this form.[4] In fact, “POPS” is the “Pharmacy Online Processing System.” See, e.g, http: / /www.mass.gov/eohhs/docs/masshealth/phar macy/pops-billing-guide.pdf (MassHealth’s Pharmacy Online Processing System Billing Guide for August 2013) (last accessed November 29, 2016). Further, the phrase “LOW DOSE EXCEPTION” suggests that the low dosage of the prescribed drug has some effect on the drug’s billing rate. Four other “Exceptions” are listed as well, including “4199—AGE EXCEPTION” and “4551-COPAY REDUCTION.” (Capitalization in original.)
Therefore, the plaintiffs “particular leap, unsupported by additional probative evidence, direct or circumstantial, . . . would not permit a reasonable inference to a sufficient degree of probability and would, in effect, impose liability on the basis of unacceptable speculation on the part of a juiy.” Vickowski v. Polish Am. Citizens Club of Town of Deerfield, Inc., 422 Mass. 606, 610 (1996). Accordingly, the plaintiff is not entitled to a revision of the June 2016 Order on this basis.[5]
II. Separate and Final Judgment
Rule 54(b) of the Massachusetts Rules of Civil Procedure also provides, “[w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross claim, or third-party claim, or when multiple parties are involved, the court may direct the entiy of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.” In the event this court declined to revise the June 2016 Order, the plaintiff also moved under this provision of Mass.R.Civ.P. 54(b). Walgreen’s assents to the plaintiffs motion for separate and final judgment.
“Rule 54(b) is directed toward efficient use of judicial resources, ‘balancing the need for immediate review, based on the likelihood of injustice or hardship to the parties of a delay in entering a final judgment as to part of the case, against the appellate courts’ ’’traditional abhorrence of piecemeal appellate review,"... as a matter of sound judicial administration.’ “ Morrissey v. New England Deaconess Ass’n—Abundant Life Cmtys., Inc., 458 Mass. 580, 594-95 (2010) (ellipses in original), quoting Long v. Wickett, 50 Mass.App.Ct. 380, 387 (2000). ”In light of [this] ‘bedrock policy against premature and piecemeal appeals,’... the narrow exception to this policy created by rule 54(b) is exercised sparingly." Id. at 595, quoting Long, 50 Mass.App.Ct. at 388; Acme Eng’g & Mfg. Corp. v. Airadyne Co., Inc., 9 Mass.App.Ct. 762, 764 (1980) (holding that court should not enter separate and final judgment “routinely or as a courtesy or accommodation to counsel” but “only where delay poses a ‘danger of hardship or injustice’ ” (citations omitted)).
“[A] valid rule 54(b) certification requires the confluence of four factors: (1) the action must involve multiple claims or multiple parties; (2) there must be a final adjudication as to at least one, but fewer than all, of the claims or parties; (3) there must be an express finding that there is no just reason for delaying the appeal until the remainder of the case is resolved; and (4) there must be an express direction of the entry of judgment.” Long, 50 Mass.App.Ct. at 386 (footnote omitted); see id, at 383 n.5 (‘The determination and direction ... is commonly referred to as rule 54(b) ‘certification,’. . . [And] [I]n the absence of a such a determination and direction, no appeal can be taken from a trial court’s partial ‘judgment’ on a claim prior to entry of a final judgment disposing of all claims against all parties to the action”). First, this case does involve multiple claims and multiple parties. See id. Second, there has been a final adjudication as to all of the plaintiffs claims against Walgreen’s. The claims that have been finally adjudicated are “separable from and independent of the remaining claims in the case” because they are not merely “different theories of recovery arising out of the same cause of action!,]” id. at 391 (citations omitted), but rather the facts upon which they are based “give rise to more than one legal right or cause of action . . .” Id, at 392 (citation omitted); see id. at 392-93 (“[C]laims may be distinct even if they have some factual overlap . . .” (citation omitted)).
As for the third factor, “[t]he determination of the presence or absence of a just reason for delay requires that ‘the facts of each case be closely examined to ensure that allowing an appeal will not wrongly fragment the case.’ ” Id. at 395 (citation omitted). Here, the plaintiff seeks the entry of separate and final judgment to enable her immediately to appeal this court’s decisions concerning Walgreen’s summary judgment motion. In the absence of such a certification under Rule 54(b), the court’s decisions concerning Walgreen’s summary judgment motion would be interlocutory and consequently not immediately appealable; “no appeal can be taken from a trial judge’s partial ‘judgment’ on a claim prior to entry of a final judgment disposing of all claims against all parties to the action.” Morrissey, 458 Mass. at 594, and cases cited; see, e.g., Quincy Mut. Fire Ins. Co. v. Western Sur. Co., 37 Mass.App.Ct. 580, 580-81 (1994) (dismissing appeal as “interlocutory as it does not appear that the judge entered an order under Mass.R.Civ.P. 54(b)”); Puckett v. Commissioner of Corr., 28 Mass.App.Ct. 448, 450 n.5 (1990) (“The defendants’ attempt to appeal from the denial of their motion for summary judgment need not be addressed, the order of denial being interlocutory, unreported, and not the subject of [a] Mass.R.Civ.P. 54(b) judgment . . .”). If the plaintiffs appeal is successful, the Appeals Court will likely remand the case to this court, where, ultimately, a second trial concerning Ms. Rivera’s allegedly wrongful *670 death[6] will ensue adjudicating whether Walgreen’s breached its duty to her. This reason, as well as the fact that there would be no resulting prejudice to Walgreen’s or the remaining defendants,[7] supports the conclusion that there is no just reason for delaying the appeal. See Long 50 Mass.App.Ct. at 386 (“The determination of the presence or absence of a just reason for delay ... is left to the sound discretion of the trial judge . . .”); see, e.g., Dattoli v. Hale Hosp., 400 Mass. 175, 177 (1987) (affirming entry of separate and final judgment where there was no reason “such as . . . potential prejudice to the opposing parly, for requiring the defendants to wait [for entry of judgment] until final judgment is entered on the claims against the other defendants”).
Therefore, the court ALLOWS the plaintiffs request, and expressly directs the entry of separate and final judgment in Walgreen’s favor on all of the plaintiffs claims against it.
III. Stay During Pendency of Appeal
Finally, the plaintiff asks this court to stay the trial in this case against the remaining defendants, currently scheduled for March 6, 2017, until the appeal of the court’s decisions concerning Walgreen’s summary judgment motion has been resolved. The plaintiff argues that if her appeal is successful, her claims against Walgreen’s will be remanded to the Superior Court for trial; if the court allows the stay, the Superior Court will be able to resolve the entirety of the plaintiffs case with one trial rather than the two trials that will result from the denial of the stay. For purposes of judicial economy, the court ALLOWS the plaintiffs motion for a stay pending her appeal of this court’s decisions concerning Walgreen’s summary judgment motion.
Dr. Schoeck and the New England Neurological Associates, the remaining defendants in this case, filed a limited opposition to the plaintiffs request for a stay, asking the court to stay the accrual of prejudgment interest during the pendency of the appeal. See G.L.c. 229, §11. As Dr. Schoeck and the New England Neurological Associates point out, the stay will result in a delay that these defendants have not caused, and the accrual of prejudgment interest during the period of the stay will result in a windfall to the plaintiff. Accordingly, prejudgment interest against Dr. Schoeck and New England will not accrue from the date on which this decision is entered on the docket through the date on which the Appeals Court renders its decision on the plaintiffs appeal.
ORDER
For these reasons, it is ORDERED that the plaintiffs motion to revise or reconsider the June 2016 Order is DENIED, the plaintiffs motion for an entry of separate and final judgment as to Walgreen’s is ALLOWED, and the plaintiffs request for a stay pending her appeal of this court’s decisions concerning Walgreen’s summary judgment motion is ALLOWED. It is further ORDERED that prejudgment interest against Dr. Schoeck and the New England Neurological Associates, P.C. will not accrue from the date on which this decision is entered on the docket through the date on which the Appeals Court renders its decision on the plaintiffs appeal.

 The use of the term “prescriber” in this section of the regulation concerning pharmacies was likely intended to distinguish the pharmacy—which may be a MassHealth “provider,” as set forth in 130 Code Mass. Regs. §406.404—from the prescribing entity, le., the customer’s health care provider.

 his point also supports the conclusion that the plaintiff will be unable to prove at trial the foreseeability of harm to Rivera. See, Meridian at Wirudchime, Inc. v. Earth Tech, Inc., 81 Mass.App.Ct. 128, 132-33 (2012) (holding that, generally, duty of care may be “determined by balancing the foreseeability of harm, in light of all the circumstances, against the burden to be imposed” and “(w]hether a consequence is foreseeable is measured by an objective standard and calls for consideration whether the injured party’s reliance on the services performed by the [allegedly] negligent parly was reasonable”).

After submitting her motion to revise and reconsider, Correa sent this court a 2011 case in which the Nevada Supreme Court held that “Nevada pharmacists have no duty to warn their customers of the generalized risks inherent in the prescriptions they fill!,]” but that when a pharmacist has “knowledge of a customer-specific risk[,] . . . the pharmacist has a duty to warn the customer or to notify the prescribing doctor of the customer-specific risk.” Klasch v. Walgreen Co., 127 Nev. 832, 838, 840 (2011) (footnote omitted). In Klasch, the plaintiff argued that the defendant pharmacy had breached its duty of care “by failing to adequately convey the potential danger inherent in a person with a sulfa allergy taking a sulfa-based medication” when the pharmacy “had specific information at its disposal regarding [the plaintiffs] sulfa allergy...” Id. at 841. The court held that the learned intermediary doctrine did not “insulate [the defendant] from liability as a matter of law” and remanded the case to the lower court to resolve the existing factual issues. Id. at 841. Klasch is consistent with Cottam, 436 Mass. at 322-23, and distinguishable from this case where the plaintiff alleges that Rivera died because she did not receive her anti-seizure medication; she did not receive her anti-seizure medication because MassHealth required prior authorization; and only the prescribing physician could provide that prior authorization to MassHealth. See infra n.5.

 Additionally, the prescribing physician of the Lamictal was not Dr. Schoeck, a neurologist, but Dr. Alonzo, a psychiatrist. Therefore, Walgreen’s could not reasonably have believed that Ms. Rivera’s Lamictal prescription was intended to treat her seizure disorder.

 Moreover, to the extent the plaintiff asserts that Walgreen’s had a duty that arose out of its knowledge that, without the Topamax, Ms. Rivera could suffer a fatal seizure, that argument fails as well, if only because “existing social values, customs, and considerations of policy” would not support exposing a pharmacy to liability for failing to provide a customer with her prescription after the customer’s insurer denies coverage and the customer is unable to pay. See, Luoni, 431 Mass. at 730; see, e.g., Roe No. 1, 469 Mass. at 716 (holding that “onerous burden” was factor in not imposing duty).

 The first trial concerning Ms. Rivera’s allegedly wrongful death will have been the trial on the claims against remaining defendants Dr. Schoeck and the New England Neurological Associates, P.C.

 As discussed below, Dr. Schoeck and the New England Neurological Associates filed a limited opposition to the plaintiffs request for a stay, asking only that the court stay the accrual of prejudgment interest during the pendency of the stay.